# Richmond

## C. P. YODER AND H. E. YODER v. H. C. GIVENS, STATE VETERINARIAN.

January 19, 1942.

Record No. 2465.

Present, Holt, Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*Charles C. Berkeley* and *James G. Martin & Son*, for the appellants.

*Abram P. Staples, Attorney-General*, and *Edwin H. Gibson, Assistant Attorney-General*, for the Commonwealth.

SPRATLEY, J., delivered the opinion of the court.

C. P. Yoder and H. E. Yoder, partners trading as the Yoder Dairy and hereinafter referred to as the plaintiffs, complain of a decree of the lower court sustaining a demurrer to their bill and amended bill, refusing them an injunction, and dismissing the bill.

The bill, as amended, was lengthy and argumentative. The allegations, relied upon in the briefs and arguments of the plaintiffs as sufficient upon demurrer to justify the granting of the relief prayed for, are as follows:

That the plaintiffs, proprietors and operators of a dairy farm of four hundred acres situate in Warwick county, Virginia, own one hundred and fifty cattle of which one hundred are regularly milked, the others being dry cows, calves, heifers, and bulls. The number of cattle varies from time to time as others are born to the herd or healthy cattle are added. Their land is estimated to be worth $40,000, their buildings and dairy equipment $30,000, and their cattle $11,000;

That the dairy farm is remote from all other cattle and stock;

That the milk is pasteurized, then sold and delivered directly to the consumer;

That the cattle had been made immune to Bang's disease, having been vaccinated with an abortion vaccine recognized as an effective preventive of Bang's disease and approved, produced, and supplied under United States Government license; that this vaccine was administered to the plaintiffs' herd in 1939, six months prior to the institution of this suit before such vaccination was made unlawful by statute, and had set up in the blood of the cattle the identical antibodies which are produced by Bang's disease, thereby successfully resisting the entrance of the germs of Bang's disease into the animals;

That the antibodies thus set up, upon examination of the blood of the animal, would react positive to the agglutination test for Bang's disease for a period of eighteen months to two years, depending upon the age of the animal, although the animal would be free from the disease;

That the cattle were healthy and free from all diseases, including Bang's disease, and did not constitute a public nuisance;

That H. C. Givens, State Veterinarian, in accordance with the provisions of the Act of the General Assembly, approved

April 1, 1938, sometimes called the Bang's Disease Act (Acts of the General Assembly, 1938, chapter 439, page 984, *et seq.*) on the 19th day of August, 1939, served notice on the plaintiffs to submit their herd of cattle to the agglutination test for Bang's disease on September 1, 1939, and comply in all other respects with the provisions of that Act. Virginia Code, 1936, sections 907-20, as amended.

That the State Veterinarian had not, in fact, received any reliable information of Bang's disease in the plaintiffs' cattle and did not know or suspect the existence of that disease in or near the plaintiffs' herd, but knowing of the efforts of the plaintiffs to organize the dairymen to procure a repeal of certain of the provisions of the above Act, and that their recently vaccinated cattle would react positive to the agglutination test for Bang's disease, notwithstanding they were free from that disease, had given the notice for a useless test with the intention of quarantining and destroying the cattle;

That the Act is arbitrary and unreasonable, and if the plaintiffs' animals are condemned and slaughtered, in accordance with its provisions, they will be destroyed in violation of the Constitution of Virginia and the Constitution of the United States.

In addition, the bill criticized the motives of the legislature in enacting the statute, the intentions and purposes of the State Veterinarian in carrying out its provision, and contained a dissertation upon the efficiency of the method prescribed by the statute as compared with other methods for the ascertainment, prevention, and control of Bang's disease.

The prayer of the bill was that an injunction be granted, "restraining the defendant, his deputies, agents and employees, and those of the Agricultural Department of the State of Virginia, from testing and slaughtering any and all of their said cattle, and that they (the plaintiffs) be given the opportunity to produce the evidence to establish the facts set out in the said bill," and that they be given a reasonable time to take the depositions.

The original bill was filed on August 31, 1939, and on that day a temporary injunction for a period of ninety days

was granted. By leave of court, an amended and supplemental bill was filed on January 11, 1941. The temporary injunction was, by various decrees, continued and extended to the January, 1941 term of the trial court.

The defendant demurred to and answered both the original and amended bill. The answer, in lengthy detail, denied the material allegations of the bill. The grounds of the demurrer were that the suit had been prematurely instituted; that chapter 439 of the Acts of the General Assembly of 1938 were constitutional; that equity will not assume jurisdiction to enjoin and restrain a public officer from performing official duties legally required of him under a valid statute; and that the bill stated no grounds for equitable relief.

The trial court, on March 7, 1941, sustained the demurrers; refused to grant the injunction prayed for; and dismissed the bill.

Do the allegations of the bill, taken as true upon demurrer, entitle the plaintiffs to an injunction against the State Veterinarian? We think not.

[■] A demurrer admits the truth of each fact well pleaded in the bill; but it does not admit any statement, inference, or conclusion of law. Neither does it admit the jurisdiction of the court over the subject matter. It tests the legal sufficiency of the pleading.

The Constitution of Virginia provides that the legislative, executive, and judicial departments of the State shall be separate and distinct, and that neither shall exercise the powers properly belonging to either of the others. Virginia Constitution, section 39.

■ Equity is conversant only with matters of property and the maintenance of civil rights. It does not undertake the revision or supervision of governmental action lawfully exercised through the executive or legislative departments. *Ferguson* v. *Board of Sup'rs of Roanoke County*, 133 Va. 561, 113 S. E. 860.

■ The rule was early established in the case of *Marbury* v. *Madison*, 5 U. S. (1 Cranch) 137, 2 L. Ed. 60, that the courts will not interfere by injunction with executive officers

in the lawful performance of official duties which are discretionary in their nature or involve the exercise of judgment. 2 High on Injunctions, (4th Ed.) section 1326.

While equity may be employed, if necessary, for the preservation of property rights which are imperiled by the unauthorized or unconstitutional exercise of power, it will not undertake to prevent an officer of the executive department of the government from performing an official act which he is required by law to perform.

The courts have not the power to interfere by injunction with the performance of a ministerial act of a public officer under a valid statute unless the manner of performance is in violation of the law or is contrary to plain, official duty. Otherwise, the effect of such interference would be to render a valid statute null and void—a contradiction of reason and a usurpation of power. 28 Am. Jur., Injunctions, sections 162 and 181; 32 C. J., Injunctions, section 383.

While the prayer of the bill before us is to enjoin the State Veterinarian from performing an official duty imposed upon him by the Act approved April 1, 1938, it is, in effect, an application for injunctive relief against the enforcement of the statute itself.

In the enactment of laws not in violation of the State or Federal Constitutions, the legislative will is supreme, and its policy is not subject to review by the courts whose province is not to regulate but to effectuate the policy of the law as expressed in valid statutes.

In the recent case of *Stickley* v. *Givens*, 176 Va. 548, 11 S. E. (2d) 631, decided November 25, 1940, subsequent to the institution of the present suit, we held that the Bang's Disease Act, as a measure to protect the public safety, health, and general welfare of the people of the State, was a reasonable exercise of the police power of the State and not violative of the Constitution of the United States or the Constitution of Virginia. We adhere to that decision. The validity of the statute is no longer an open question.

In that case, while it was admitted that the cattle were infected with Bang's disease, the appellant also alleged that

there were more effective methods for the control of Bang's disease than the one selected by the legislature, and that the tests there made were conducted in an improper and unsanitary manner. It was held that it was the province of the legislature to determine the method for the test, and that the evidence failed to show that the tests were not properly conducted.

The Bang's Disease Act was enacted for the prevention, control, and eradication of contagious and infectious diseases of livestock and poultry. It gives to the State Board of Agriculture and Immigration, the State Veterinarian, and all other veterinarians within the State, authority, and makes it their duty, to use their best efforts to protect such animals from disease. It declares Bang's abortion disease to be both contagious and infectious and directs the State Board of Agriculture and Immigration to take such measures as may seem necessary to them to eradicate and prevent the spread of that disease. It requires the State Veterinarian, upon receipt of reliable information, and whenever he knows, suspects, or has good reason to believe, that Bang's disease exists in any locality in the State, to go at once and make an examination of the cattle, and if infection be found, to adopt and enforce such quarantine and regulation as may be deemed necessary to prevent the spread of the disease. It provides a special test for Bang's disease, the agglutination test, and for the condemnation, quarantine, and slaughter of cattle found infected with that disease. The owner of the suspected or infected cattle is required, upon demand of the State Veterinarian, to submit them to that test after five days notice.

In the event the owner does not slaughter an animal found to be diseased within ninety days after the test has been made, or within such period of time as the State Veterinarian may require, the Veterinarian is authorized to seize the condemned animal and slaughter it.

Misdemeanor penalties are provided for violation of the statute.

Thus, the statute charges designated officers with the duty of discovering Bang's disease. Discovery is necessarily

a prerequisite to its successful control and eradication. An examination is essential to discovery. A delay in the examination until infection has permitted spread of the disease would largely nullify all efforts of prevention and control. It is the reported or suspected existence of the disease that confers upon the State Veterinarian the authority and imposes upon him the duty, to make the test provided by law. To a certain extent, his duties are discretionary; but the method of the test is mandatory. Neither he nor this court have the power to substitute an alternative method. Any other method of ascertainment must be declared by the General Assembly and not by the court. The necessity for the legislation and the form of its exercise are both vested in the wisdom of the legislature.

It is not for us to determine whether an agglutination test of a vaccinated animal, regardless of the prior health of the animal, is useful. The legislature has determined this in unequivocal terms.

The Act of 1938 made it unlawful for any person, firm or corporation, without permission in writing by the State Veterinarian, to sell or dispense vaccine prepared as a preventative or remedy for Bang's disease. (Acts 1938, chapter 439, page 989.) In 1940, the statute was amended and enlarged by making it "unlawful for any person, firm or corporation to buy, sell or have in possession, or to administer to livestock, or to permit any other to administer to livestock" any such vaccine, without permission in writing from the State Veterinarian, for each such purchase, sale, or administration. The amendment further provides for the identification and disposition of each animal to which the vaccine has been administered. (Acts 1940, chapter 423, page 764; 1940 Supp. to Michie's Code of 1936, section 918.)

The provisions of both the original Act and its amendment clearly proclaim the conclusion of the General Assembly that the prevention and control of Bang's disease could not be accomplished by uncontrolled vaccination. Nevertheless, the plaintiffs, with vaccine secured from beyond the borders of this State, vaccinated their cattle in

1939. At that time, the act of vaccination of itself was not specifically unlawful. It, however, was contrary to the spirit and purpose of the statute. It was administered in the face of and despite the provision that a positive reaction to an agglutination test would subject a tested animal to quarantine and condemnation.

In the instant case, the defendant, in the exercise of the discretion and authority conferred upon him, gave due notice of his intention to examine the cattle of the plaintiffs. Possessed of that discretion and power, in general, its exercise cannot be questioned before he has taken action. That which the law authorizes cannot constitute a legal wrong. It is not fraud to do that which one is required to do by valid law.

For the foregoing reasons, we conclude that this suit was prematurely brought, and that equity has not the power to enjoin or restrain a public officer from performing his official duties in a manner authorized by valid law nor to give relief against the enforcement of a valid statute merely because of an anticipation of damages in its administration.

The bill is a pure bill for an injunction. Its prayer is solely for an injunction. The demurrer went to the merits of the bill. The facts and circumstances alleged were insufficient in law to justify the sole object of the proceedings. The bill was properly dismissed.

It follows that there was no error in the decree of the trial court.

*Affirmed.*