# Richmond

## Elvin N. Vaughan and Kenneth A. Vaughan v. State Board of Embalmers and Funeral Directors of Virginia, Et Al.

June 21, 1954.

Record No. 4198.

Present, All the Justices.

The opinion states. the case.

*Woodward & Ferguson* and *Sands, Marks & Sands,* for the appellants.

*J. Lindsey Almond, Jr., Attorney General* and *Aubrey R. Bowles, Jr., Special Assistant to the Attorney General,* for the appellees.

HUDGINS, C.J., delivered the opinion of the court.

Elvin N. Vaughan and Kenneth A. Vaughan, complainants in the trial court, obtained this appeal to review a decree sustaining a demurrer to and dismissing their bill filed against the State Board of Embalmers and Funeral Directors, whereby they sought to enjoin the Board from interfering with them in the conduct of their business as embalmers and funeral directors.

The demurrer admits as true all averments of material fact which are properly pleaded. It does not admit the in-

ferences and conclusions of law, with which appellants' bill and amended bill are honeycombed. Such irrelevant allegations make unduly burdensome the task of studying many printed pages of allegations in order to determine whether there is any real merit in appellants' case.

The material allegations of fact are substantially as follows: (1) that appellants are negro citizens over twenty-one years of age; that they are the owners of the Vaughan Funeral Home in Franklin, Virginia, and have been employing a licensed funeral director and embalmer to conduct their business; (2) that Kenneth A. Vaughan is entitled to a license to operate a funeral home, without examination, under the provisions of the so-called "grandfather clause" in Section 1720-a and 1720-b, Chapter 127, Acts of 1936, as amended, (Acts of 1948, Chapter 348, p. 680); that Elvin N. Vaughan is entitled to a license to operate a funeral home under the so-called "grandfather clause" of sections 1720-a and 1720-b, Chapter 127, Acts of 1936, as amended by the Acts of 1948, Chapter 348, p. 680; (3) that each possessed the qualifications required by Title 54, Chapter 10, of the Code, to take the examination prescribed therein (secs. 54-244 and 54-245), and at various times had taken the examination given by the State Board of Embalmers and Funeral Directors (hereinafter designated Board), and had passed the same, but the Board had refused to issue either of them a license to operate a funeral home; (4) that appellants were convicted in the trial justice court of Southampton county for conducting a funeral home without a license and they appealed the judgments of conviction, which appeals are now pending before the circuit court of Southampton county; (5) that the Board has refused to give appellants a fair examination, as required by sections 54-244, 54-245 and 54-248, on their knowledge of sanitation and disinfection of dead bodies, but, on the contrary and in fraud of their rights, each time they have applied for examination and paid the required fee the Board has subjected them to an examination on various subjects that had no connection or

bearing upon their knowledge of sanitation and disinfection of bodies of deceased persons where death is caused by infectious, contagious, or communicable disease, and on subjects not required by law; (6) that Title 54, Chapter 10, of the 1950 Code, regulating the business of embalming and funeral directing is unconstitutional and void.

The prayer of the bill is (a) that Title 54, Chapter 10, of the Code, be declared unconstitutional and void; (b) that the Board be enjoined and restrained from the prosecution of criminal proceedings against appellants pending in the circuit court of Southampton county; (c) that the Board be enjoined and restrained from interfering with or molesting appellants in the conduct of their business as funeral directors and embalmers; (d) that if Title 54, Chapter 10, be valid the Board be compelled to give each appellant a license to engage in the business of funeral directing and embalming, or that the Board be required to give each of them such examinations as are required by Code section 54-244 for funeral directors, for assistant funeral directors as required by section 54-245, and for embalmers as required by section 54-248.

Appellants advance three reasons in support of their contention that Title 54, Chapter 10, of the Code, is unconstitutional and void: (1) the manner in which the Board is created; (2) the provision of the statute that requires an applicant to serve as an assistant funeral director for at least two years before he is qualified to take the examination is unreasonable and arbitrary; and (3) the fact that the statute makes no provision for judicial review of the Board's decision on matters of examination.

The constitutionality of this statute was raised and determined adversely to appellant's contention in *Walton* v. *Commonwealth*, 187 Va. 275, 46 S. E. (2d) 373. In that case Walton, a licensed funeral director in Tennessee, was charged with unlawful practice as a funeral director in Virginia. It was held that one act of directing a funeral in

Virginia was not engaging in the practice of funeral direct-
ing in violation of the statute, now section 54-256. In deal-
ing with the constitutionality of Chapter 127 of the Acts of
1936, now Title 54, Chapter 10, of the 1950 Code, regulat-
ing the business of funeral directing and embalming, it was
said at page 278, (187 Va., *supra*):

"(1, 2) Statutes of the kind under consideration generally
have been considered valid. The undertaking business is
one of a public or quasi-public nature, closely related to the
health, safety and general welfare of a community, and is
therefore a business which under the police power may be
subjected to regulation and control. In the handling of
dead bodies there is a possibility of contagion and certain
sanitary practices must be carried out. A state has the power
to establish boards of undertaking and embalming. such as
has been done in Virginia.

"(3) It is also well recognized that a State may require
undertakers and embalmers to secure licenses before they
engage in the practice of their profession, and as a con-
dition to securing a license applicants may be required to
possess certain qualifications such as being graduates of cer-
tain prescribed schools where the profession is taught."

Appellants contend that the facts in that case made it
unnecessary to pass upon the constitutionality of the act;
hence, they say the decision upholding its constitutionality is
*obiter dictum* and not controlling in this case. While we
are not in accord with appellants' view of the decision in
the *Walton* case, in order to remove any doubt which may
have arisen as to the validity of the statute, we will review
briefly the three reasons advanced by appellants in support
of their contention that the act is unconstitutional.

■ (1) Appellants argue that the act is unconstitutional
because of the manner in which the members of the State
Board of Embalmers and Funeral Directors are appointed.
Section 54-226 requires that every member appointed to the
Board shall be a licensed embalmer and practicing funeral
director with a minimum of at least five years' experience in

this state in the practice of embalming and the care and disposition of dead human bodies. Section 54-224 provides that the Board shall consist of five members to be appointed by the Governor for a "term of five years, one appointment to be made annually", and none is eligible to serve for more than two successive terms. Section 54-225 provides: "Each appointment on the Board *may be made* from a list of at least three names for each vacancy submitted to the Governor, or to the Governor-elect, by the Virginia Funeral Directors' Association. Nominations are to be made to the Governor by June first of each year. The Governor shall notify the Association promptly of any vacancy other than by expiration and like nominations may be made for the filling of the vacancy. *In no case shall the Governor be bound to make any appointment from among the nominees of the Association.*" (Italics supplied)

There is nothing unusual or discriminatory in the statute authorizing the Funeral Directors' Association to provide the Governor with an advisory recommendation for appointments to the Board. The Governor may or may not make the appointments from the list of names furnished. Indeed, this is the common provision in different statutes relating to boards charged with the duty of administering statutes regulating professions and occupations that require expert knowledge and skill. A similar provision is found in section 54-156 relating to the Board of Dental Examiners, in section 54-264 relating to librarians, in section 54-284 relating to the Board of Medical Examiners, in section 54-330 relating to nurses, in section 54-375 relating to optometry, in section 54-778 relating to veterinarians, and in section 54-406 relating to pharmacy.

In *Prata Undertaking Co.* v. *State Board of Embalming, etc.*, 55 R. I. 454, 182 A. 808, 104 A. L. R. 389, p. 397, the same attack was made upon a Rhode Island statute of like import. In upholding the constitutionality of the provision the Supreme Court of Rhode Island said:

"The appellants also, in discussing section 9, argue that the limiting of membership on the board, which is to enforce and carry out the provisions of the act, to citizens and residents of this state who shall have been actually engaged for at least five years in the undertaking business in this state as embalmers and funeral directors on their own account, . . . is unfair and discriminatory. In view of the fact that this business is of a peculiar and highly specialized nature, it seems to us reasonable and proper that the board be composed of undertakers. . . . In our opinion this matter of the personnel of the board falls within the general scope of legislative policy or discretion with which we are not concerned, and the provision in question is valid and unobjectionable."

■ (2) Appellants' second reason advanced in support of their contention that the act is unconstitutional relates to that part of the statute which requires that an applicant for examination to obtain a license as a funeral director must have "served as assistant funeral director for at least two years before being licensed".

This same argument was advanced and rejected in *Walton* v. *Commonwealth, supra,* the point being raised by the following language found on page 11 of the petition for writ of error in that case: "Another ground of the invalidity of this Act is, its unreasonable provision that any person seeking a license to engage in the practice or business of funeral directing or undertaking must serve an apprenticeship of at least two years as an assistant to a funeral director, or undertaker, and before being employed as an assistant funeral director he is required to be possessed of exactly the same knowledge . . . as is a funeral director."

*People* v. *Ringe,* 197 N. Y. 143, 90 N. E. 451, 27 L. R. A., N. S. 528, and *People* v. *Harrison,* 170 App. Div. 802, 156 N. Y. Supp. 679, relied on in appellants' brief, were cited and considered in the *Walton* case on this point, but were distinguished. These cases held that the business of undertaking and embalming is properly subject to regulations. How-

ever, it was held in *People* v. *Ringe* that the requirement of the New York statute that an undertaker must also have an embalmer's license in order to engage in undertaking was an unreasonable requirement. The Virginia act has no such provision. It was likewise held that the requirement of the New York statute of three years' continuous service or apprenticeship as a prerequisite to taking the examination was arbitrary. There is no similar requirement in the Virginia act that the two years of apprenticeship shall have been continuous. In this respect the Virginia act differs materially from the New York act.

The Virginia statute prescribes two classes of funeral directors, that is a funeral director and an assistant funeral director. An assistant funeral director is somewhat in the nature of an apprentice. In order to qualify to take the examination for a funeral director's license, in addition to knowledge, experience is also required. This theory of apprenticeship is found in a number of statutes concerning businesses and professions. A similar requirement is made in other statutes concerning a license as a certified public accountant, section 54-89; a license as a nurse, sections 54-346 and 54-347; a license as a pilot, section 54-536. Experience plus knowledge makes a person more efficient in the performance of duties requiring special skill.

(3) Appellants' third reason advanced in support of their contention is that the statute makes no provision for judicial review of the Board's decision on matters of examination.

The pertinent section, 54-254, provides: "Any person who has been refused a license for any cause other than failure to pass the examination, or whose license has been revoked or suspended, shall have the right of appeal to the corporation court of the city, or circuit court of the county, as the case may be, in which he resides, either in term or vacation and a trial *de novo*."

It will be noted that any applicant who has been refused

a license on any ground other than want of technical knowledge is given an appeal as a matter of right to the corporation or circuit court, but that the question of whether or not he possesses the necessary knowledge or skill in preparing dead bodies for burial is left to the opinion of the Board to be determined by examination of applicants as to their competency to engage in the business. As heretofore stated, the Board is composed of persons not only with knowledge of sanitation and disinfection of bodies of deceased persons, but with at least five years' experience in the practice of embalming and the care and disposition of dead bodies. If such a Board so composed has determined the competency or the incompetency of an applicant, a review of the examination papers by a court would serve no purpose except to substitute the court's opinion for that of the Board. It is obvious that a court is not as well qualified to form an opinion of scientific subjects relating to funeral directing and embalming as is the Board possessing the stated qualifications. No judicial review is given to applicants who have failed to pass the examination given by the Board of Bar Examiners, the Board of Medical Examiners, or by the examiners in other professions and occupations which require special knowledge and skill. We see no reason why such a review should be given an applicant who has failed to pass an examination given by the State Board of Embalmers and Funeral Directors.

We find nothing unreasonable or arbitrary in the act regulating the business of embalming or funeral directing. The business is admitted to be one of a *quasi* public nature and concerns the health, safety and general welfare of the community and, therefore, the act is well within the police power of the General Assembly to adopt. However, the fact that the Act is valid will not permit the Board in administering it to discriminate between individuals or classes similarly situated. Appellants allege they have been discriminated against. This phase of the case will be discussed later in the opinion.

Whether Kenneth A. Vaughan and Elvin N. Vaughan, or either of them, are entitled to a license under the so-called "grandfather clause" of the original Act and as amended depends upon the facts. If either of them on June 19, 1936, the date the 1936 Act became effective, was engaged in funeral directing and embalming in this state, he, under the express terms of the Act, was entitled to such a license upon payment of the fees required.

Elvin N. Vaughan admits that he was not engaged in business as a funeral director or assistant funeral director on June 19, 1936, but alleges that he was so engaged on the date that the 1948 amendment to the original Act became effective, and that this amendment extended the "grandfather clause" to its effective date, and, therefore, he was entitled to a license without being required to take an examination.

The original Act provided that on and after June 19, 1936, every person engaged in business as a funeral director, assistant funeral director, or embalmer must obtain a license therefor. Those who were actually engaged in such business on that date were not required to take the examination prescribed by the statute. Every person who was not so engaged on that date and desired to engage in such business was required to take the examination prescribed. Elvin N. Vaughan was not engaged in such business on June 19, 1936. He has never obtained a license; hence, he could not have been lawfully engaged in such business prior to or on the effective date of the 1948 amendment.

Another answer to this contention is that neither of the appellants alleges that he had made an application to the Board for a license based upon the "grandfather clause" and that such license was refused. If upon such applications such licenses were refused, their remedy would be by appeal to the circuit court of Southampton county under the provisions of section 54-254.

The only remaining question presented is whether

the alleged unlawful and *ultra vires* acts of the Board entitles appellants to relief and, if so, what their remedy is.

On this question the pertinent facts alleged are that each of the appellants is possessed of all the qualifications required by law for a license to conduct a funeral home; that each has taken such examination presented to him by the Board and has passed the same; that, notwithstanding this fact, each has been denied a license; and that the Board in denying the licenses has "arbitrarily, capriciously, unlawfully, maliciously, and in direct abuse of its authority, submitted to complainants, examinations having little relevancy to Funeral Directing, but upon questions involving government, history, geography, biology, science, economics, law, medicine, chemistry, pharmacy, anatomy, transportation and interstate commerce, in defiance of Sections 54-244 and 54-245 of the Code of Virginia".

The averment that each appellant had passed the examination given by the Board, if true, entitled each of them to a license. Ordinarily, the judgment of the Board on whether an applicant had passed the examination is final and conclusive. But where it is alleged, as here, that the Board, in determining whether appellants possessed "a reasonable knowledge of sanitation and disinfection of bodies of deceased persons where death is caused by infectious, contagious, or communicable disease", acted capriciously, arbitrarily and unlawfully, is in substance a charge of unfaithfulness, bias and partiality in the discharge of the duty imposed by statute upon the Board. Such acts are abhorrent to natural justice and fair dealing and equity will not deny a party so treated an opportunity to establish the truth of his charge.

The foregoing averment that the appellants had passed the examinations is inconsistent with the allegation that the examinations given by the Board were not designed to ascertain whether either of them possessed a reasonable knowledge of sanitation and disinfection of the bodies of de-

ceased persons, but were designed and framed to prevent the attainment of a passing grade except by the whim or caprice of the Board. It is also alleged that the examinations were prepared with the specific intent and purpose to deprive appellants of their right to engage in the business of conducting a funeral home, thus, they say, depriving them of equal protection under the law and perpetrating a fraud upon their rights.

It is averred that the Board in performing its duties under the statute did not act on its own independent judgment, but acted as an adjunct of the Virginia State Funeral Directors' Association, wholly controlled by it "wherein the said . . . Board carries out the policies of the Association, and by various abuses, practices and unlawful acts, prevents qualified persons from becoming licensed as Funeral Directors, Assistant Funeral Directors and Embalmers, and, . . . in everywise perpetuates and maintains and is a monopoly in restraint of trade and inimical to the public welfare." If these averments be true, and the demurrer admits them to be true, then the Board by its unlawful, arbitrary and *ultra vires* acts has denied appellants equal protection of the law and has prevented them from engaging in a lawful business.

The Board contends that even if the allegations be true, appellants' remedy is by application for writ of mandamus to compel it faithfully and impartially to perform the duties imposed upon it by the statute and not by a bill praying for mandatory injunction.

Ordinarily mandamus lies to compel an administrative officer to perform legally his official duties, but where such officer or board is vested with discretion, such discretion cannot be controlled or reviewed by mandamus. 12 Michie's Jur., Mandamus, section 14, p. 357.

In *Mayor* v. *Savannah Distributing Co.*, 202 Ga. 559, 43 S. E. (2d) 704, the facts were that the State Revenue Commissioner, who was charged with the duty of administering the laws relating to intoxicating beverages, had the statutory

right to revoke for cause a license theretofore granted after notice and a hearing. The City of Savannah passed an ordinance paralleling the state law regarding the regulation and control of liquor licenses. The municipal authorities revoked the license, without notice or hearing, of the Savannah Distributing Company, but did not revoke the existing license of any other person or corporation similarly situated. In a suit to enjoin the municipality, the Court, in an opinion delivered by Presiding Judge Duckworth, now Chief Justice, held that equity had jurisdiction to compel the city to restore the license so illegally withdrawn. It was also held that the exercise of police power cannot override the demands of natural justice, that the legislature could not exercise the police power for private purposes, nor for the exclusive benefit of particular individuals or classes, and that the equal protection clause of the 14th amendment of the United States Constitution is offended if the public law is applied differently to different persons under similar circumstances.

We held in *Board of Supervisors* v. *Combs*, 160 Va. 487, 169 S. E. 589, that where the redress sought is for past privations of a right as well as restoration of the right in the future, a bill in equity and not mandamus is proper.

It is also alleged that the criminal proceedings instituted by the Board in Southampton county against the appellants charging them with conducting a funeral business without a license was a part of its unlawful plan and design to prevent appellants from securing licenses and to "embarrass and degrade them in the eyes of the public at large . . . and to cause them irreparable loss and damages not wholly compensable in money". If these allegations be established then appellants were entitled to licenses to conduct a funeral home prior to the institution of the criminal proceedings against them. The constitutionality of the Act could have been raised in the criminal proceedings, as was done in *Walton* v. *Commonwealth*, *supra*. The judgment of the Board in refusing to grant licenses on the ground that ap-

pellants did not possess the required knowledge and skill would be conclusive upon the court in the criminal cases, but such judgment is not conclusive on a direct attack upon it.

For the reasons stated, the decree sustaining defendants' demurrer is reversed and set aside and the case remanded for further proceedings not inconsistent with the views herein expressed.

*Reversed and remanded.*