COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Willis and Elder
Argued at Alexandria, Virginia


ROBERT W. HUTCHINS
                                            OPINION BY
v.      Record No. 2241-97-4        JUDGE LARRY G. ELDER
                                          JUNE 16, 1998
ROSANA L. CARRILLO


            FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
                Richard J. Jamborsky, Judge Designate

            Robert W. Hutchins, pro se.

            (Robert J. Hill, on brief), for appellee.


        Robert W. Hutchins ("father") appeals the order of the

Circuit Court of Prince William County ("circuit court")

dismissing his appeal of a decision by the Juvenile and Domestic

Relations District Court of Prince William County ("J&DR court")

regarding the custody and support of his two children.  Father

contends the circuit court erroneously concluded it lacked

jurisdiction over his appeal when the sole reason for his

noncompliance with the appeal bond requirement of Code

§ 16.1-296(H) was due to the unauthorized early closing of the

J&DR court clerk's office on the last day of the filing period.

For the reasons that follow, we reverse and remand.

                               I.

                             FACTS

        On May 28, 1997, the J&DR court entered an order denying

father's petition to change child custody and ordering him to pay

$1,212.40 per month to Rosana L. Carrillo ("mother") for the support of their two minor children. The J&DR court also found that father owed a support arrearage of $532.20 to mother and ordered him to pay $300 to a guardian _ad_ _litem_ who had been appointed to represent the parties' children. On June 6, 1997, father noted his appeal of the J&DR court's order. On this date, the J&DR court set father's appeal bond at $832.20. Under Code § 16.1-296(H), the deadline for father to file his appeal bond was Friday, June 27, 1997.

At 2:00 p.m. on June 27, father arrived at the clerk's office of the J&DR court to file his appeal bond. The established hours of the J&DR court clerk's office on this date were 8:00 a.m. to 4:00 p.m. _See_ Rules of Sup. Ct. of Va. 1:15(d), App. of General Information Relating to the Courts within each Circuit and District in Virginia 119 (1997) (stating the established hours of each court's clerk's office). However, the clerk's office had closed for the day sometime before 2:00 p.m. in order to "process a backlog of support petitions." Because the clerk's office was closed, father could not file his appeal bond with the J&DR court that day. Father's obligations to his employer prevented him from returning to the J&DR court until July 3, 1997. On this date, the J&DR court accepted father's appeal bond and scheduled his trial in the circuit court on July 17, 1997.

On July 17, mother moved the circuit court to dismiss

father's appeal.  Mother argued that the circuit court was without jurisdiction to hear father's appeal because father had failed to file his appeal bond on or before June 27.  The circuit court agreed and dismissed father's appeal.  Citing Commonwealth, Virginia Dept. of Soc. Services, Div. of Child Support Enforcement, ex rel. May v. Walker, 253 Va. 319, 485 S.E.2d 134 (1997), the circuit court concluded it could not rely upon Code § 16.1–114.1 to obtain jurisdiction over father's appeal.  Father excepted to "the dismissal of this appeal, due to the unauthorized closing of the [J&DR court clerk's office] during the final hours of the time limit set to post bond."

## II.
## UNAUTHORIZED EARLY CLOSING OF CLERK'S OFFICE
## ON LAST DAY OF PERIOD TO FILE APPEAL BOND

Father contends the early closing of the J&DR court clerk's office on June 27 was an unauthorized act that "grievously interfered" with his right to appeal.  We agree.

A deprivation of a protected property interest caused by a random, unauthorized act of a state employee is a violation of the Fourteenth Amendment's Due Process Clause if the state "fails to provide an adequate postdeprivation remedy."[1]  Zinermon v.

---

[1]Father's right to appeal the J&DR court's decision set forth in Code § 16.1–296 is a protected "property interest" under the Due Process Clause of the Fourteenth Amendment.  The "property interests" protected by the Fourteenth Amendment are not created by the Constitution; rather, they are created by existing rules or understandings that stem from an independent legal source, such as state laws, "that secure benefits and . . . support claims of entitlement to those benefits."  Board of Regents of State

<u>Burch</u>, 494 U.S. 113, 115, 110 S. Ct. 975, 977–78, 108 L.Ed.2d 100 (1990) (citing <u>Hudson v. Palmer</u>, 468 U.S. 517, 533, 104 S. Ct. 3194, 3204, 82 L.Ed.2d 393 (1984); <u>Parratt v. Taylor</u>, 451 U.S. 527, 541, 101 S. Ct. 1908, 1916, 68 L.Ed.2d 420 (1981), <u>overruled in part not relevant here by</u> <u>Daniels v. Williams</u>, 474 U.S. 327, 330–31, 106 S. Ct. 662, 88 L.Ed.2d 662 (1986)).

Applying this principle to the unique facts of this case, we hold that the circuit court erred when it overruled father's exception to its order dismissing his appeal based upon the unauthorized closing of the clerk's office on June 27. The early

---

<u>Colleges v. Roth</u>, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

> The hallmark of property . . . is an individual entitlement grounded in state law, which cannot be removed except "for cause." Once that characteristic is found, the types of interests protected as "property" are varied and, as often as not, intangible, relating "to the whole domain of social and economic fact."

<u>Logan v. Zimmerman Brush Co.</u>, 455 U.S. 422, 430, 102 S. Ct. 1148, 1155, 71 L.Ed.2d 265 (1982) (citations omitted). The right to appeal created by Code § 16.1-296 is an entitlement grounded in state law that can be removed only "for cause" -- either because the substance of the appeal does not merit the remedy sought or because of procedural default. Moreover, the United States Supreme Court has previously held that a statutorily created cause of action "is a species of property protected by the Fourteenth Amendment's Due Process Clause." <u>Id.</u> at 428, 431, 102 S. Ct. at 1154, 1155. "The right to appeal would be unique among state actions if it could be withdrawn without consideration of applicable due process norms." <u>Evitts v. Lucey</u>, 469 U.S. 387, 400-01, 105 S. Ct. 830, 839, 83 L.Ed.2d 821 (1985).

-4-

closing of the J&DR court clerk's office on the last day father was permitted to file his appeal bond was a random, unauthorized act. Furthermore, our review of Virginia law indicates that father had no adequate postdeprivation remedy for the loss of his right to appeal in this manner. As such, father's right to appeal was deprived without due process of law.

A.

UNAUTHORIZED ACT

The early closing of the clerk's office on June 27 was a random, unauthorized act. The legal authority to establish the business hours of a district court clerk's office is shared by two parties: the Committee on District Courts ("committee") and the chief judge of each district.[2] The committee has adopted a policy that sets forth the extent of each party's authority to establish the business hours for a particular district court clerk's office. See Office of the Executive Secretary, Sup. Ct. of Va., Personnel Policy Manual ch. VII (1990). Under the policy, the committee has established a flexible range of hours -- "8:00 a.m. to 5:00 p.m., Monday through Friday" -- within which each district court clerk's office must be open at least eight hours. Id. at VII-1, VII-2. The chief judge

---

[2]Under Code § 16.1-69.33, the committee has the power to authorize the establishment of district courts' clerk's offices and to establish "when such offices shall be open for business." Under Code § 16.1-69.35(5), the chief judge of each district has administrative authority to determine when his or her court "shall be open for the transaction of business."

determines the exact business hours of his or her court clerk's office, provided they are within the range set forth by the

committee.[3]  The only exceptions to the required working hours enumerated in the policy are the occurrence of inclement weather and legal holidays.  See id. at VII-2 to VII-3.  Significantly, the policy does not authorize the chief judge of a district court to unilaterally close his or her clerk's office before the expiration of the required eight-hour period on a particular business day for the purpose of processing a backlog of work.

In this case, the decision to close the J&DR court clerk's office on June 27 violated the committee's policy.  The regular business hours established for the J&DR court clerk's office by the chief judge were 8:00 a.m. to 4:00 p.m.  However, the record indicates that, on June 27, the clerk's office closed sometime before 2:00 p.m., less than six hours after it opened.  Although

---

[3]The committee's policy states:

> It is the policy of the Court System that normal business hours be defined as eight hours between the hours of 8:00 a.m. to 5:00 p.m., Monday through Friday . . . .

Personnel Policy Manual at VII-1.  The policy explains the extent of the chief judge's discretion to set the particular hours for his or her court:

> The hours for clerk's offices shall be set by the chief judge(s) with the provision that on each business day (Monday through Friday) at least eight hours fall between the 8:00 a.m. to 5:00 p.m. period.  This is to assure that court services are available to the public during normal business hours.

Id. at VII-2.

the record established that the clerk's office closed in order to "process a backlog of support petitions," neither the chief judge nor any employee of the clerk's office had legal authority to unilaterally close the clerk's office for this purpose.

Furthermore, the unauthorized early closing of the J&DR court clerk's office on June 27 caused the deprivation of father's right to appeal. Code § 16.1-296(H) provides that, in cases involving support that are adjudicated by a J&DR court, "no appeal shall be allowed" unless and until the appellant "gives bond" which adequately secures "that portion of any order or judgment establishing a support arrearage or suspending payment of support during pendency of [the] appeal." Code § 16.1-296(H). "An appeal will not be perfected unless such appeal bond as may be required is filed within thirty days from the entry of the [J&DR court's] final judgment or order." Code § 16.1-296(H) (emphasis added). The failure to substantially comply with the procedures attendant to filing an appeal bond "'constitutes a jurisdictional defect which cannot be corrected after the expiration of the time within which an appeal may be taken.'" Walker, 253 Va. at 322, 485 S.E.2d at 136 (quoting Parker v. Prince William County, 198 Va. 231, 235, 93 S.E.2d 136, 139 (1956)). Thus, when father was prevented from filing his appeal bond on June 27 -- the thirtieth day of the statutory period -- by the early closing of the J&DR court clerk's office, his right to appeal under Code § 16.1-296 was terminated.

B.

POSSIBLE REMEDIES UNDER VIRGINIA LAW

Next, we consider whether Virginia law provided father with an adequate postdeprivation remedy for the loss of his appeal caused by the unauthorized closing of the J&DR court clerk's office. "[T]o determine whether a procedural due process violation has occurred, courts must consult the entire panoply of . . . postdeprivation process provided by the state." Fields v. Durham, 909 F.2d 94, 97 (4th Cir. 1990) (citing Zinermon, 494 U.S. at 126, 110 S. Ct. at 983). Our review of Virginia law revealed six avenues of relief potentially available to father –– (1) Code § 16.1-296(H), (2) Code § 16.1-114.1, (3) a writ of mandamus, (4) a mandatory injunction, (5) a claim for monetary damages under the Virginia Tort Claims Act, and (6) Code § 1-13.3:1. None of these potential avenues of relief could have remedied the loss of his appeal.

1.

Code § 16.1-296(H) and § 16.1-114.1

Neither of the two narrow exceptions to the appeal bond requirement of Code § 16.1-296(H) was available to enable the circuit court to retain jurisdiction over father's appeal.

Virginia jurisprudence regarding the procedures attendant to filing an appeal bond is "clear, unequivocal, and emphatic." Covington Virginian, Inc. v. Woods, 182 Va. 538, 543, 29 S.E.2d 406, 408 (1944). When applicable, the appeal bond requirement of

Code § 16.1-296(H) is mandatory, and noncompliance with it is an incurable defect that deprives the circuit court of jurisdiction over the case.  See Walker, 253 Va. at 322, 485 S.E.2d at 136.

Currently, the Code provides two narrow exceptions to the rule that compliance with the appeal bond requirement must be flawless in order to confer jurisdiction upon the circuit court.  The first, which is implicit in Code § 16.1-296(H), occurs when a party is in "substantial compliance" with the statutory requirements.  Cf. Brooks v. Epperson, 164 Va. 37, 43, 178 S.E. 787, 788 (1935) (stating that "substantial compliance with statutory [appeal bond] requirements is all that is necessary").  The second, which is provided by Code § 16.1-114.1, occurs when the noncompliance with the statutory requirements is "a mere defect, irregularity or omission in the proceedings in the district court, or in the form of any such pleading, [that] may be corrected by a proper order of the [circuit court]."  Code § 16.1-114.1; see Burks v. Three Hills Corp., 214 Va. 322, 323-24, 200 S.E.2d 521, 522 (1973); Jenkins v. Bertram, 163 Va. 672, 674-75, 177 S.E. 204, 205 (1934).

Neither of these limited exceptions to the appeal bond requirement was available to remedy father's inability to file his appeal bond before the close of business on June 27.  First, father's right to appeal could not be resuscitated on the ground that he substantially complied with Code § 16.1-296(H).  The express, unambiguous language of Code § 16.1-296(H) requires that

the appeal bond be actually "filed" with the J&DR court within the prescribed time period. Based on the Virginia Supreme Court's strict application of the appeal bond requirement in prior cases, we cannot say father's actions in this case constituted substantial compliance with Code § 16.1-296(H). In Brooks, the Supreme Court held that filing an appeal bond without surety but with a certified check covering the amount of the judgment was not substantial compliance with the statutory requirement of "sufficient surety." See Brooks, 164 Va. at 42-44, 178 S.E. at 789-90. In Covington Virginian, Inc., the Supreme Court held that filing an appeal bond without affixing the appellant's corporate seal was not substantial compliance even though "the executed instrument provided ample security for the payment of any judgment in [appellee]'s favor, in that the [appellant] was bound by its written obligation and its surety could not . . . deny its liability." Covington Virginian, Inc., 182 Va. at 544, 29 S.E.2d at 409. In both cases, the instrument that was filed was adequate to satisfy the essential function of an appeal bond -- "to protect the [appellee] against any loss or damage he may sustain by reason of the suspension of his right to proceed with the collection of his judgment against the [appellant]." Jacob v. Commonwealth ex rel. Myers, 148 Va. 236, 242, 138 S.E. 574, 576 (1927). Nevertheless, in both cases, the appellants' noncompliance with technical requirements that had no effect on the instruments' ability to secure the appellees'

-11-

judgments rendered the instruments inadequate to satisfy the apparently rigid standard of substantial compliance.

In this case, father arrived at the courthouse with appeal bond in hand two hours before the clerk's office was scheduled to close on the thirtieth day of the statutory period. However, because the clerk's office had closed early, he was unable to file his appeal bond with the clerk of the J&DR court. Thus, we cannot say father "substantially complied" with the requirement of Code § 16.1-296(H) that the appeal bond be "<u>filed</u>" within thirty days of the entry of the J&DR court's order.

In addition, the circuit court correctly concluded that Code § 16.1-114.1 could not be utilized to cure father's untimely filing of his appeal bond. The early closing of the J&DR court clerk's office on the thirtieth day of the statutory period, even when unauthorized, is not among the "irregularities" covered by Code § 16.1-114.1. By its express terms, Code § 16.1-114.1 applies only to an "irregularity . . . <u>in the proceedings</u> in the district court, or in the form of any such pleading." (Emphasis added); <u>cf.</u> <u>Hurst v. Ballard</u>, 230 Va. 365, 367, 337 S.E.2d 284, 285 (1985) (stating that "the curative provisions of [Code § 16.1-114.1] . . . cannot be used to correct jurisdictional defects"); <u>Scheer v. Isaacs</u>, 10 Va. App. 338, 342, 392 S.E.2d 201, 203 (1990) (stating that Code § 16.1-114.1 "does not envision or authorize the exercise of discretion to excuse the total failure to comply with a mandatory statutory requirement

-12-

for an appeal bond").  As currently written, Code § 16.1-114.1 does not empower a circuit court to correct an irregularity in the day-to-day operations of a district court clerk's office that inadvertently causes an appellant to miss the statutory deadline for timely filing an appeal bond.

2.

<u>Writ of Mandamus</u>

Father could not obtain a writ of mandamus to remedy the loss of his right to appeal caused by the unauthorized early closing of the J&DR court clerk's office on June 27.

In this case, the "deprivation" of father's right to appeal did not occur until he failed to file his appeal bond by 4:00 p.m. on June 27, the end of the J&DR court's normal business hours.  Thus, in order for a writ of mandamus to provide father with an adequate <u>post</u>deprivation remedy, father must have been able to obtain it <u>after</u> June 27.

No writ of mandamus issued after June 27 could have restored father's right to appeal.  "Mandamus is an extraordinary remedy which may be used to compel a public official to perform a purely ministerial duty that is imposed upon the official by law."  <u>Town of Front Royal v. Front Royal and Warren County Indus. Park Corp.</u>, 248 Va. 581, 584, 449 S.E.2d 794, 796 (1994).  However, the remedy provided by a writ of mandamus cannot be applied retroactively and is not available "to correct action, however erroneous it may have been."  <u>Board of Supervisors of Amherst</u>

County v. Combs, 160 Va. 487, 498, 169 S.E. 589, 593 (1933). In order to cure father's noncompliance with the filing requirement of Code § 16.1-296(H), the writ would have to render father's bond "filed" on or before June 27. But, any writ obtained by father after June 27 could have a prospective application only. See id. A writ of mandamus "is not granted to undo an act already done." Id. (citation omitted). Regardless of how erroneous the closing of the J&DR court clerk's office on June 27 may have been, a writ of mandamus could not lie to retroactively correct this error.

Although, in theory, a writ of mandamus did lie on June 27 to compel the clerk's office to reopen before its official closing time of 4:00 p.m., appellant is not precluded from claiming that his appeal was terminated without due process solely because he failed to utilize this possible predeprivation remedy. As discussed previously, the deprivation in this case was caused by a random, unauthorized governmental act and not an established state procedure. The United States Supreme Court has held that, when a protected interest is deprived by "random, unauthorized conduct of a state employee," the state is not constitutionally required to provide any form of predeprivation procedure. See Hudson, 468 U.S. at 533, 104 S. Ct. at 3203-04 (discussing the holding of Parratt). The Supreme Court reasoned that the Due Process Clause cannot impose such a requirement because, as a practical matter, "the state cannot know when such

deprivations will occur."  Hudson, 468 U.S. at 533, 104 S. Ct. at 3203; see also Parratt, 451 U.S. at 541, 101 S. Ct. at 1916 (stating that the Due Process Clause does not require predeprivation process for deprivations caused by unauthorized conduct because the state "cannot predict precisely when the loss will occur").

> In situations where the State feasibly can provide a predeprivation hearing before taking property, it generally must do so regardless of the adequacy of a postdeprivation tort remedy to compensate for the taking.  Conversely, in situations where a predeprivation hearing is unduly burdensome in proportion to the liberty interest at stake or where the State is truly unable to anticipate and prevent a random deprivation of a liberty interest, postdeprivation remedies might satisfy due process.

Zinermon, 494 U.S. at 132, 110 S. Ct. at 987 (citations omitted).  When a deprivation of a protected interest is caused by a random, unauthorized governmental act, the victimized citizen is in a position similar to that of the state.  Like the state, a citizen is unable to predict when such deprivations will occur.  Just as the state is required to provide predeprivation procedures only when feasible, citizens whose protected interests are lost in this manner should not be deemed to have waived their right to postdeprivation process by failing to seek theoretical predeprivation remedies that a reasonable person would consider unobtainable as a practical matter.

In this case, father could not reasonably have expected to obtain a writ of mandamus in the two hours remaining before the

J&DR court clerk's office officially closed for the day.  The procedural requirements for obtaining such a writ, particularly the notice requirement of Code § 8.01-644, made obtaining this remedy impossible as a practical matter in this short period of time.

3.

Mandatory Injunction

A mandatory injunction could not have remedied the loss of father's appeal after it was deprived by the unauthorized closing of the clerk's office on June 27.

In a proceeding in equity, a circuit court has the power to "interfere by injunction with the performance of a ministerial act of a public officer under a valid statute [when] the manner of performance is in violation of the law or is contrary to plain, official duty."  Yoder v. Givens, 179 Va. 229, 235, 18 S.E.2d 380, 382 (1942).  "[E]quity may be employed, if necessary, for the preservation of property rights which are imperiled by the unauthorized . . . exercise of power . . . ."  Id.  "The function of a mandatory injunction is to undo an existing wrongful condition" that is likely to continue in the absence of an injunction, WTAR Radio-TV Corp. v. City Council of the City of Virginia Beach, 216 Va. 892, 894, 223 S.E.2d 895, 898 (1976), and a bill in equity seeking a mandatory injunction is the "proper remedy" to redress the past privation of a right by a government official.  Combs, 160 Va. at 498, 169 S.E. at 593; see also

<u>Vaughan v. State Bd. of Embalmers and Funeral Directors</u>, 196 Va. 141, 153, 82 S.E.2d 618, 625 (1954).  Through such a suit, a court can compel the government official to restore in the future the right that was illegally withdrawn.  <u>See</u> <u>Vaughan</u>, 196 Va. at 153, 82 S.E.2d at 625.

A mandatory injunction could not help father in this case. Unlike in <u>Vaughan</u>, the state actor responsible for the deprivation of father's right to appeal has no authority to restore it.  The party responsible for the closure of the clerk's office on June 27 could not be legally ordered to do anything that could effect the restoration of father's right to appeal.

Because father's right to appeal was terminated when he failed to file his appeal bond on June 27, the only mandatory injunction that could conceivably restore father's right to appeal would be one compelling the J&DR court to treat father's appeal bond as if it was filed on that date.  Such an injunction would effectively order the J&DR court to make a <u>nunc</u> <u>pro</u> <u>tunc</u> entry in the record of father's case indicating that his appeal bond was filed on June 27 rather than July 3.  However, such an injunction could not be issued because it would require the J&DR court to exceed the scope of its power to enter <u>nunc</u> <u>pro</u> <u>tunc</u> orders.  The inherent power of a court to correct clerical errors in the record "is restricted to placing upon the record evidence of judicial action which has actually been taken" and does not extend "to show[ing] what the court should have done as

distinguished from what actually occurred."  <u>Council v.</u>

<u>Commonwealth</u>, 198 Va. 288, 292, 94 S.E.2d 245, 248 (1956).

> [T]he purpose of a <u>nunc</u> <u>pro</u> <u>tunc</u> entry is to
> correct mistakes of the clerk or other court
> officials, or to settle defects or omissions
> in the record so as to make the record show
> what actually took place.  It is not the
> function of such entry by a fiction to
> antedate the actual performance of an act
> which never occurred, to represent an event
> as occurring at a date prior to the time of
> the actual event, "or to make the record show
> that which never existed."

<u>Id.</u> at 293, 94 S.E.2d at 248 (citation omitted).  A <u>nunc</u> <u>pro</u> <u>tunc</u>

entry by the J&DR court that it received father's appeal bond on

June 27 rather than July 3 would be improper because it would

create a fiction that father filed his appeal with the clerk's

office on a date before he actually did so.  <u>Cf.</u> <u>Holley v. City</u>

<u>of Newport News</u>, 6 Va. App. 567, 569, 370 S.E.2d 320, 321 (1988).

It is axiomatic that no court can issue an injunction compelling

the performance of an unlawful act.  Because the only mandatory

injunction that could restore father's right to appeal would

compel the chief judge to enter an unlawful <u>nunc</u> <u>pro</u> <u>tunc</u> order,

this remedy could not be utilized by father to obtain

postdeprivation relief for the loss of this right.

Furthermore, it was just as impractical for father to seek a

mandatory injunction after he discovered the closing of the

clerk's office at 2:00 p.m. on June 27 as it was for him to

petition for a writ of mandamus.  Although a preliminary

injunction may be obtained through an ex parte proceeding, <u>see</u>

Cohen v. Rosen, 157 Va. 71, 75-76, 160 S.E. 36, 37 (1931) (holding that the notice requirement of now-Code § 8.01-329 is discretionary when necessary to prevent threatened and irreparable damage), we cannot say that having a request for such an injunction adjudicated by a circuit court and the court's order executed before the 4:00 p.m. filing deadline passed was a realistic probability. This theoretical predeprivation remedy was not sufficiently practicable under the circumstances presented to father so as to provide him with a meaningful opportunity to prevent the termination of his appeal by the unauthorized closing of the J&DR court clerk's office.

4.

Virginia Tort Claims Act

The Virginia Tort Claims Act ("Act") also fails to provide father an adequate postdeprivation remedy for the loss of his right to appeal the J&DR court's decision. Any claim brought by father for the loss of his appeal would be excluded from recovery under the Act because the early closing of the J&DR court on June 27 was the act of a court. See Code § 8.01-195.3(3) (expressly excluding compensation of any claims "based upon an act or omission of any court of the Commonwealth . . .").

Moreover, even assuming that father's claim was not excluded from recovery, the sole remedy available to father under the Act, a claim for "money," Code § 8.01-195.3, is not adequate to compensate him for the nature of his loss -- his inability to

appeal a determination regarding which custody and support arrangement is in the best interests of his children. Attempting to redress the loss of this property interest through a suit for monetary damages would be a lengthy and speculative process. <u>Cf. Logan v. Zimmerman Brush Co.</u>, 455 U.S. 422, 436-37, 102 S. Ct. 1148, 1158, 71 L.Ed.2d 265 (1982). Furthermore, because the remedies available under the Act do not include reinstatement of a deprived right to appeal, even a suit that successfully established the Commonwealth's liability could not fully vindicate father's interest in having the circuit court review his claim that the J&DR court's decision was not in the best interests of his children. <u>Cf.</u> <u>id.</u>

5.

<u>Code § 1-13.3:1</u>

Finally, father could not utilize the extension of filing periods provided by Code § 1-13.3:1 for "authorized" closings of clerks' offices.

Code § 1-13.3:1 extends the filing period for appeal bonds by one day when the clerk's office is closed "as authorized by statute" on the last day of the filing period. It states:

> <u>When the last day fixed by statute</u>, or by rule of the Supreme Court of Virginia for the commencement of any proceeding, <u>for any paper to be</u> served, delivered, or <u>filed</u>, or for any other act to be done in the course of judicial proceedings <u>falls on</u> a Saturday, Sunday, legal holiday, or <u>any day on which the clerk's office is closed as authorized by statute</u>, the proceeding may be commenced, <u>the paper may be</u> served, delivered or <u>filed</u> and

-20-

> the act may be done <u>on the next day that is</u>
> <u>not a</u> Saturday, Sunday or legal holiday or
> <u>day on which the clerk's office is closed as</u>
> <u>authorized by statute</u>.

Code § 1-13.3:1 (emphasis added).

By its terms, the statute was not intended to remedy the situation that confronted father on June 27.  Code § 1-13.3:1 expressly states that it applies only when the closing of a clerk's office is "authorized by statute."  As previously discussed, the early closing of the J&DR court clerk's office on June 27 was unauthorized.  The General Assembly intended to limit the application of Code § 1-13.3:1 to authorized closings of clerk's offices apparently because a litigant can reasonably expect such a clerk's office to reopen on the next business day in accordance with the law.  Such an expectation does not exist when the closing of a clerk's office on the last day of a filing period is both unexpected and unauthorized.  If Code § 1-13.3:1 applied to unauthorized closings of clerks' offices, a clerk's office could string litigants along by closing early on consecutive days and requiring those needing access to the office to return day-after-day until they found the office open.  As long as a particular court paper was filed on the next day that the offending clerk's office decided to operate in accordance with the law, due process would be satisfied.  The unambiguous language of the statute indicates that the General Assembly did not intend for Code § 1-13.3:1 to be utilized to promote such an

abuse of authority by those responsible for administering justice in the Commonwealth.

## III.

## CONCLUSION

Because the early closing of the J&DR court clerk's office on June 27 was an unauthorized governmental act that caused father to lose his right to appeal and because Virginia law currently provides no adequate postdeprivation remedy for the loss of this constitutionally protected property interest, father's right to appeal was deprived without due process of law. As such, the circuit court erred when it overruled father's exception, and we reverse its order dismissing his appeal.

Regarding the remedy in this case, the record indicates that the appeal bond tendered by father on July 3 was in an appropriate amount and that it was accepted by the J&DR court and transferred to the circuit court. In light of these facts, we remand this case to the circuit court with instructions to proceed as if father timely satisfied the appeal bond requirement of Code § 16.1-296(H).

<u>Reversed and remanded</u>.