# Richmond

## W. J. Walton v. Commonwealth of Virginia.

March 1, 1948.

Record No. 3334.

Present, All the Justices.

276

The opinion states the case.

*Campbell & Campbell* and *Bandy & Bandy*, for the plaintiff in error.

*Harvey B. Apperson, Attorney General,* and *Ballard Baker,* for the Commonwealth.

GREGORY, J., delivered the opinion of the court.

The plaintiff in error, W. J. Walton, was tried upon a criminal warrant in which he was charged with a violation of Chapter 72 of the Code of Virginia, 1942 (Michie), (secs. 1715 to 1736, inc.), which treats of embalming and funeral directing. The case was heard by the judge without the intervention of a jury and Walton was found guilty "as charged in plaintiff's warrant", and his punishment fixed at a fine of $50.00.

The original warrant in the case charged that "W. J. Walton, in said county, did on the 25th day of November, 1946, unlawfully remove and prepare for burial the body of Ella Wright Cole, and did bury the same in Wise county, Virginia, without having a license so to do from the Virginia State Board of Embalmers and Funeral Directors." Just before the trial the attorney for the Commonwealth moved to amend the warrant, which was done over the objection of counsel for the accused. As amended, the warrant reads that Walton "did unlawfully practice the profession of a funeral director, undertaker and embalmer, and as such did remove and prepare for burial the body of Ella Wright Cole, and did bury the same in Wise county, Virginia, without having a license so to do from the Virginia State Board of Embalmers and Funeral Directors * * * ."

The attorney for the Commonwealth in offering the amendment stated to the court that he did not think the original warrant was sufficient to charge the crime.

Walton is a resident of Kingsport, Tennessee, where he is employed by the Huff Funeral Home. By profession he is an embalmer and funeral director and licensed as such under the laws of the State of Tennessee, but he holds no license to practice that business or profession from the Virginia State Board of Embalmers and Funeral Directors.

Mrs. Ella Wright Cole died at the Appalachian General Hospital in Appalachia, Virginia, and her body was removed from the hospital, not by Walton, but by others, to Kingsport, Tennessee. Walton had nothing to do with the removal of the body. When the body reached Kings-

port, Walton embalmed it. From the evidence this seems to have been the only service performed by him. There is no evidence that he engaged in the other preparations of the body for burial. He did return the body to Big Stone Gap, Virginia, after it had been embalmed and prepared for burial in Kingsport, Tennessee, and he had charge of the funeral and burial at Big Stone Gap. It is contended that, inasmuch as he conducted this one funeral and burial in Virginia without a license from the Virginia State Board of Embalmers and Funeral Directors, he was guilty of a violation of the Virginia Embalmers Act. Does the one isolated act constitute a violation of the Virginia statute regulating the embalming and interment of dead human bodies, and constitute the unlawful practice of the profession of a funeral director, undertaker and embalmer?

The court found the accused guilty "as charged in the plaintiff's warrant". The charge in the amended warrant as we have seen was that Walton did "unlawfully practice the profession of a funeral director, undertaker and embalmer * * * ."

There are four assignments of error but we think the determinative one is that the evidence is not sufficient to sustain a conviction.

Statutes of the kind under consideration generally have been considered valid. The undertaking business is one of a public or quasi-public nature, closely related to the health, safety and general welfare of a community, and is therefore a business which under the police power may be subjected to regulation and control. In the handling of dead bodies there is a possibility of contagion and certain sanitary practices must be carried out. A State has the power to establish boards of undertaking and embalming such as has been done in Virginia.

It is also well recognized that a State may require undertakers and embalmers to secure licenses before they engage in the practice of their profession, and as a condition to securing a license applicants may be required to possess certain qualifications such as being graduates of

certain prescribed schools where the profession is taught. *People* v. *Ringe*, 197 N. Y. 143, 90 N. E. 451, 27 L. R. A., N. S., 528, and *Prata Undertaking Co.* v. *State Board of Embalming, etc.*, 55 R. I. 454, 182 A. 808, 104 A. L. R. 389, Annotations in 23 A. L. R., p. 71, and 104 A. L. R., p. 402; 54 Am. Jur., Undertakers and Embalmers, section 3, p. 508, and section 5, p. 511.

The Virginia Act (Virginia Code, 1942 (Michie), secs. 1715 to 1736, inc.), after setting up a board to be known as the State Board of Embalmers and Funeral Directors of Virginia, makes provision in section 1720 for the qualification and the licensing of embalmers, and in section 1720a for the qualification and licensing of funeral directors. Section 1721 provides that a member of a firm or manager of a corporation engaged in funeral directing shall be licensed, and embalmers and funeral directors of other States may be licensed in Virginia under certain conditions.

Section 1726 defines the term "embalming", and "funeral director". It is in this language: "For the purpose of this chapter, the term 'embalming' shall be construed to mean the preservation and disinfection, or attempted preservation and disinfection of the dead human body by application of chemicals externally or internally, or both. The term 'funeral directing' or 'funeral director' as used in this chapter shall be construed to mean the business or profession of directing or supervising funerals for profit, * * * ".

Section 1723 carries the penalty for violation of the Act, and reads as follows: "It shall be unlawful for any person to engage in the profession or business of embalming or funeral directing or as an assistant funeral director as defined in this chapter, unless he is duly licensed as an embalmer or funeral director or assistant funeral director within the meaning of this chapter, and any person who shall engage in either business or profession or both without having first complied with the provisions of this chapter shall be guilty of a misdemeanor and upon conviction thereof in any court having jurisdiction of misdemeanor cases,

shall be fined not less than fifty dollars nor more than one hundred dollars for each and every offense."

A reading of the entire Act convinces one that it was the intent and purpose of the legislature to regulate the business or profession of embalming and of funeral directing. In fact, in several sections of the Act this intent is expressed in language that is free from doubt. For instance in section 1720 the section begins in this way, "every resident of this State hereafter desiring to engage in the practice of embalming dead human bodies within the Commonwealth * * * ". And a little further on in the section it is expressed in this way, "To practice the science of embalming and the care and disposition of the dead." Again in section 1720a it is expressed no less than six times in this one section. It begins, "Every person engaged in the practice or business of funeral directing or undertaking". All through this statute it is clear that the regulation is of the business or practice of embalming or acting as funeral director. Section 1720b expresses the same intent in two different places. Section 1721 expresses it twice.

From these statutes there can be little doubt about the intent of the legislature. The purpose of the entire Act was to prohibit the practice of the profession or the conduct of the business of embalming and funeral directing in Virginia without a license.

The Attorney General, however, lifts from the context this language from section 1721, " * * * but no assistant, no member of any firm, and no officer or employee of any corporation shall engage in the care, preparation, disposal and burial of dead human bodies, or the management of burials, or the discharge of any of the duties of a funeral director, unless he shall be a licensed funeral director under the provisions of this chapter, * * * " and contends that even a single act in the discharge of any of the duties of a funeral director would constitute a violation of the statute.

We cannot agree with this contention for the reason that the quoted language must be read in connec-

tion with the other language of that section and the other sections of the Act, and when so read there can be no doubt as to the meaning and intent of the legislature in that particular section which, in our opinion, was that if a member of a firm or the manager of a corporation desired to engage in the practice or business of funeral directing in Virginia he would be obliged to secure a license under the provisions of this chapter.

The warrant as originally written did not charge an offense because it did not charge that the accused practiced the profession or engaged in the business without a license. It charged only a single act. It was for this reason that the attorney for the Commonwealth offered the amendment in which it was charged that the accused practiced the profession of funeral director, undertaker and embalmer without a license. He knew that the violation consisted not in committing one act but rather in the practice or conduct of the business, and the accused was adjudged guilty not for one act but for practicing and conducting the business.

There is no prohibition in the entire statute against a single act, and we must remember that we are construing a criminal statute. If the General Assembly desired to punish for a single act it would have so provided in plain language. It may happen that the relatives of a deceased might desire to bury the body in a private burial ground. Under the law (Code, secs. 1565-1570 and 1571) upon a proper certificate of death the local registrar shall issue a burial permit. When this is done the burial may take place without the services of a professional undertaker. At least we find nothing in the Act involved in this case that would prohibit it. A case of this kind might have been in the minds of the legislature when it failed or refused to provide that one act or burial would be a violation.

The accused, according to the evidence, did not maintain a place of business in Virginia. He sought no business here. He was not shown to have practiced his profession or conducted his business in this Commonwealth.

When the statutory definition contained in section 1726 is considered with the penalty provisions in section 1723 and the other sections of the Act, and in the light of the evidence in the case, the conclusion is inescapable that the accused did not engage in the practice or business of embalming or funeral directing in Virginia without a license.

It would seem unnecessary in the determination of what constitutes the practice or conduct of the profession or business of embalming and funeral directing to go beyond the definitions contained in section 1726. There the term "funeral directing" as used in the entire chapter is construed to mean "the business or profession of directing or supervising funerals for profit, * * * * ".

However, when we refer to the case reports we find that the courts generally consider "doing business" or "conducting a business" as more than one act. Those terms include the performance of a continued series of acts. The idea of continuity or sustained activity is implicit in the terms. For instance, in *Lewellyn* v. *Pittsburgh, etc., R. Co.*, 222 F. 177, at p. 185, the court held that to engage "in business" means the same thing as "carrying on business", and the latter expression means the same as "doing business". The court further held that those expressions taken either separately or connectedly convey the thought of "progression, continuity, or sustained activity", and that "carrying on business" does not mean a performance of a single disconnected business act. To like effect is *Dane* v. *Brown*, 70 F. (2d) 164, and *Supreme Malt Products Co.* v. *United States*, 153 F. (2d) 5.

The late case of *Nippert* v. *Richmond* (1946), 327 U. S. 416, 66 S. Ct. 586, 90 L. Ed. 760, 162 A. L. R. 844, is to the same effect.

Within the purview of foreign corporation law, doing business in the State means more than the performance of one act. See *Goldsberry* v. *Carter*, 100 Va. 438, 41 S. E. 858.

Of incidental interest is *Derrick* v. *Commonwealth*, 122 Va. 906, 95 S. E. 392, L. R. A. 1918D, 284, and *Watts*

v. *Commonwealth*, 106 Va. 851, 56 S. E. 223, Ann. Cas. 1914B, 738. In Restatement of the Law, Conflict of Laws, at page 244, "doing business" within the purview of foreign corporation law is defined as "doing a series of similar acts for the purpose of thereby realizing pecuniary benefits, or doing a single act for such purpose with the intention of thereby initiating a series of such acts."

We are of opinion that the evidence fails to disclose that the accused violated the Act, that the judgment should be reversed and the case dismissed.

*Reversed and dismissed.*