870 F.2d 123
 GUARDIAN PLANS INC.; Benny R. Benson; Willard D. Tharp;
Ben E. Rogers, Jr., Plaintiffs--Appellants,
v.
Joseph W. TEAGUE; Frederick R.M. Carter; David M. Farris;
Emogene Bennett; Donald K. Jones; Ernest L. Myers; John
Harvey Givens; David L. Bailey, Jr.; Susan L. Modlin,
Members, Board of Funeral Directors & Embalmers; Bernard L.
Henderson, Jr., Director, Department of Health Regulatory
Boards; Virginia Funeral Directors Association Inc.'s,
Defendants--Appellees.
 No. 88-3101.
 United States Court of Appeals,
Fourth Circuit.
 Argued Nov. 3, 1988.
Decided March 7, 1989.
Rehearing Denied April 12, 1989.
Rehearing In Banc Denied June 1, 1989.
 
 William Gray Broaddus, Thomas E. Spahn (McGuire, Woods, Battle & Boothe, on brief), for plaintiffs-appellants.
 Anthony Francis Troy (Susan W. Custer, Mays & Valentine, on brief), Guy Winston Horsley, Jr., Sr. Asst. Atty. Gen. (Mary Sue Terry, Atty. Gen., R. Claire Guthrie, Deputy Atty. Gen., Teresa D. Creef, Asst. Atty. Gen., Office of the Atty. Gen., on brief) for defendants-appellees.
 Before HALL, Circuit Judge, BUTZNER, Senior Circuit Judge, and KISER, United States District Judge for the Western District of Virginia, sitting by designation.
 K.K. HALL, Circuit Judge:
 
 
 1
 Guardian Plans, Inc., a Virginia corporation, and Benny R. Benson, its agent (collectively referred to as "Guardian"), along with Willard D. Tharp and Ben E. Rogers, Jr., two Funeral Directors licensed by the Commonwealth of Virginia, appeal the district court's decision upholding the constitutionality of the licensure requirements and the telephone solicitation restrictions of Virginia's funeral laws. We affirm.
 
 I.
 
 2
 Guardian markets the Guardian Plan ("plan"), an insurance-funded prearranged funeral program. Under the plan, a client arranges his funeral by selecting certain funeral goods and services with the assistance of one of Guardian's salespersons, none of whom are trained in the funeral service profession. A salesperson then calculates the cost of the prearranged funeral and sells the client a life insurance policy, the proceeds of which are sufficient to pay for the funeral. The client then revocably assigns the death benefit to Guardian, which then makes arrangement with a participating funeral home that will eventually provide the goods and services.
 
 
 3
 Upon the death of the client, the family must consent to the release of the policy proceeds to a funeral home. For its part, a funeral home agrees to provide the promised services regardless of whether their cost exceeds the policy proceeds. By the terms of the agreement, if the proceeds exceed the cost of the funeral, the surplus is refunded to the client's survivors.
 
 
 4
 In Virginia, Guardian promotes this plan through regular media advertising, targeted direct mailings, and telemarketing. In particular, its telemarketing is done as a follow-up on households that do not respond to its direct mailings. Calls are placed to these households to attempt to persuade potential clients to agree to an in-home sales visit. No sales of the plan are done over the phone.
 
 
 5
 In May, 1985, the Virginia Board of Funeral Directors and Embalmers ("Board"), the regulatory authority of the funeral service profession, became aware of Guardian's solicitation practices, which it believed were contrary to state law. In May, 1987, the Board instigated an investigation into the solicitation practices of a number of funeral homes that participated in the plan. Among those funeral homes investigated were those operated by appellants Tharp and Rogers. Upon learning of the investigation, Guardian entered into negotiations with the Board in an attempt to settle this dispute. When these negotiations failed, Guardian filed this suit.
 
 
 6
 In this action, Guardian sought declaratory relief that Virginia's funeral profession license requirement was unconstitutional, and injunctive relief against its enforcement. Joining in the action were Tharp and Rogers, who also challenged the statute's telephone solicitation restrictions.[1] Later, the Virginia Funeral Director's Association, Inc., intervened on behalf of the license requirement.
 
 
 7
 The case proceeded to a two-day bench trial. In a ruling from the bench, the district court upheld the statute in all respects. This appeal followed.
 
 II.
 
 8
 Appellants challenge Virginia's funeral service profession regulation in several respects. First, all of the appellants contend that Virginia's licensure requirement is unconstitutionally vague. Alternatively, they argue that if the statute is not vague, its requirement that all licensed funeral professionals graduate from a mortuary school and serve a two-year apprenticeship, is so stringent that it cannot withstand due process/equal protection scrutiny.[2] Appellants Tharp and Rogers also contest the statute's solicitation provisions. They argue that a fair reading of the statute demonstrates that it is unconstitutionally vague and not intended to address preneed solicitation. They also contend that even if the statute is not vague and does apply to preneed solicitation, it cannot ban telemarketing because to do so would run afoul of the first amendment's protection of commercial speech. We address these claims seriatim.
 
 
 9
 Under Virginia's regulatory scheme, the Board determines the qualifications for a person to engage in the funeral service profession. Va.Code Sec. 54-260.70. To lawfully practice the profession, an individual must possess these qualifications and be licensed by the Board. Id. Appellants' vagueness challenge goes to the definition of the "practice of funeral services." The statute reads in pertinent part:
 
 
 10
 (2) "Practice of funeral services " shall mean engagement in the care or disposition of the human dead or in the practice of disinfecting and preparing by embalming or otherwise the human dead for the funeral service, transportation, burial or cremation, or in the practice of funeral directing or embalming as presently known, whether under these titles or designations or otherwise. It shall also mean the engagement of making arrangements for funeral service, selling funeral supplies to the public or making financial arrangements for the rendering of such services or the sale of such supplies.
 
 
 11
 Id. 54-260.67(2) (emphasis added).
 
 
 12
 Appellants maintain that the phrase "engagement of making arrangements for funeral service" is unconstitutionally vague and does not fairly warn them whether the arrangements made through the plan bring the Guardian salespersons within this definition. We find this argument meritless.
 
 
 13
 Recently, in United States v. Santoro, 866 F.2d 1538 (4th Cir.1989), we reiterated the principle that in challenges to statutes which do not implicate first amendment rights, "a party who engages in conduct clearly proscribed by a statute cannot complain of the vagueness of that statute as applied to others." At 1542, see also Village of Hoffman Est. v. Flipside, Hoffman Est., 455 U.S. 489, 494-95, 102 S.Ct. 1186, 1191-92, 71 L.Ed.2d 362 (1982). We find this principle controlling. Here, Guardian salespersons arrange every aspect of a client's funeral, from the type of service down to the variety of flowers. The itemized cost of the entire funeral is then calculated and the client purchases insurance to defray the expense. Guardian's advertisements tout the plan as an easy way to make "funeral arrangements" in the comfort of the client's home, and as a way to relieve clients' families "of the burden of funeral arrangements." Whatever vagueness inheres in the phrase "making arrangements for funeral service," appellants are in no position to raise it here. Santoro, 866 F.2d at 1542; Gallaher v. City of Huntington, 759 F.2d 1155, 1160 (4th Cir.1985). Appellants' activity clearly constitutes the "practice of funeral services" as defined by the Virginia act.
 
 
 14
 The licensing requirements for funeral service professionals in Virginia are extensive. The Commonwealth requires that an applicant must have been graduated from a school of mortuary science, completed a two-year apprenticeship, and have passed a rigorous examination on restorative arts, basic sciences, and funeral business principles. Va.Code Sec. 54-260.70. Appellants' due process/equal protection challenge is premised on their belief that it is ludicrous to require a salesperson, who does nothing more than make preneed arrangements, to have the same credentials as a full-fledged funeral director. They argue that the proof of the irrationality of this requirement lies in the fact that, although designed to protect consumers, its effect is plainly anti-consumer by restricting consumer choice in this traditionally anti-competitive market. We are unpersuaded.
 
 
 15
 As economic regulations, we may not strike these requirements down unless they are "wholly arbitrary," without any basis in reason. City of New Orleans v. Duke, 427 U.S. 297, 303-04, 96 S.Ct. 2513, 2516-17, 49 L.Ed.2d 511 (1976). They must be upheld as long as they are rationally related to a legitimate state interest. Id. Appellants concede that Virginia's legitimate interest in protecting the health, safety and welfare of its citizens through regulation of the funeral profession is well recognized. Walton v. Commonwealth, 187 Va. 275, 46 S.E.2d 373 (1948); see also Daniel v. Family Security Life Ins. Co., 336 U.S. 220, 69 S.Ct. 550, 93 L.Ed. 632 (1949) (regulation of funeral insurance sales); National Funeral Services, Inc. v. Rockefeller, 870 F.2d 136 (4th Cir.1989), (regulation of preneed funeral contracts); Harry and Bryant Co. v. FTC, 726 F.2d 993 (4th Cir.1984), cert. denied, 469 U.S. 820, 105 S.Ct. 91, 83 L.Ed.2d 37 (FTC regulation of funeral sales practices). Thus, our only inquiry is whether a rational relationship exists between the licensure requirements and the state's interest.
 
 
 16
 Appellants' position boils down to a disagreement with the Virginia General Assembly's judgment in refusing to establish different licensure requirements for persons who do nothing more than arrange funerals. In essence, they seek to isolate, and treat differently, this one aspect of the funeral service profession. This argument has been rejected by several courts in regard to several other professions. Williamson v. Lee Optical, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955) (upheld requirement that only a licensed optometrist or opthamologist may refit old lenses into new frames); England v. Louisiana State Bd. of Medical Examiners, 246 F.Supp. 993 (E.D.La.1965), aff'd 384 U.S. 885, 86 S.Ct. 1924, 16 L.Ed.2d 998 (1966) (upheld requirement that chiropractors must have a full medical license); Sutker, supra, (upheld requirement that only licensed dentists could fit dentures). The Supreme Court's admonition in Lee Optical is directly applicable:
 
 
 17
 [A] law may exact a needless, wasteful requirement in many cases. But it is for the legislature, not the courts, to balance the advantages and disadvantages of the new requirement.... The day is gone when this Court uses the Due Process Clause of the Fourteenth Amendment to strike down state laws, ..., because they may be unwise.... "For protection against abuses by legislatures the people must resort to the polls, not the courts."
 
 
 18
 Id. 348 U.S. at 487-88, 75 S.Ct. at 464-65 (citations omitted). The Virginia General Assembly could have rationally determined that keeping the arrangement of funerals in the hands of licensed funeral professionals would benefit the public by ensuring competence in funeral arrangement. Our inquiry ends here. The wisdom of this determination is simply irrelevant. Because these licensure requirements are rationally related to a legitimate interest, they survive due process/equal protection scrutiny. Therefore, anyone who makes funeral arrangements in the Commonwealth of Virginia must be a licensed funeral service professional.
 
 III.
 
 19
 Appellants Tharp and Rogers challenge Virginia's limitations on their ability to solicit preneed funeral clients over the telephone.[3] Their initial contention is that the statute is vague and was not intended to prohibit preneed solicitation. They contend that the statute addresses only at-need solicitation. Our examination of the pertinent statutory language forces us to conclude otherwise.
 
 
 20
 The relevant portion of the statute prohibits:
 
 
 21
 (c) Solicitation of dead human bodies by the licensee, his agents, assistants or employees, whether such solicitation occurs after death or while death is impending; however, this shall not be deemed to prohibit general advertising;
 
 
 22
 (d) Employment by the licensee of persons known as "cappers," or "steerers," or "solicitors," or other such persons to obtain the services of a holder of a license for the practice of funeral service;
 
 
 23
 (e) Employment directly or indirectly of any agent, employee or other person, on part or full time, or on a commission, for the purpose of calling upon individuals or institutions by whose influence dead human bodies may be turned over to a particular funeral establishment;
 
 
 24
 (f) The direct or indirect payment or offer of payment of a commission by the licensee, his agents, or employees for the purpose of securing business;
 
 
 25
 Va.Code Sec. 54-260.74(2) (emphasis added).
 
 
 26
 Appellants' obvious concentration on subsection (c) does not change the plain language of subsections (d) and (e), which prohibits the employment of any solicitor or agent for the purpose of calling upon individuals by whose influence corpses may be sent to a particular funeral home. There is nothing in the language of this provision which limits its application to at-need solicitation, and, consequently, we may not do so.[4] Our conclusion that the legislature intended to ban preneed solicitation has the strongest possible support, a 1988 joint resolution by the Virginia General Assembly which expressly states that preneed solicitation is prohibited by present law. House Joint Resolution 50.
 
 
 27
 Further, the language of this blanket prohibition of all solicitation is certainly sufficient to forewarn a reasonable person that the telephone solicitation of preneed funeral arrangements, the sole purpose of which is to direct a particular human body to a particular funeral home, is proscribed by the statute. Gallaher, supra, at 1160. Thus, these appellants cannot complain of vagueness. Flipside, supra, 455 U.S. at 495, 102 S.Ct. at 1191-92.[5]
 
 
 28
 Tharp's and Rogers' final contention is that the ban on telemarketing is an unconstitutionally over-broad, content-based restriction of their right to free commercial speech. In the companion case we decide today, National Funeral Services v. Rockefeller, 870 F.2d 136 (4th Cir.1989), we rejected this very argument.[6] While Rockefeller dealt with a ban on door-to-door solicitation, as well as telemarketing, it squarely held that a ban on the telemarketing of preneed funeral contracts in private residences,[7] when other viable advertising alternatives are left open, comports with the first amendment. In this case, Guardian's plan is so similar to the preneed contracts of Rockefeller, that there can be no principled analytical distinction. Furthermore, the Virginia statute leaves open ample alternatives for appellants to advertise their services. Consequently, Virginia's ban on telemarketing also does not violate the first amendment.
 
 IV.
 
 29
 In sum, the Commonwealth of Virginia's licensure requirements are not unconstitutionally vague and are consonant with the equal protection and due process of law. Likewise, Virginia's restriction on telephone solicitation by its funeral service professionals does not violate the first amendment. Therefore, in all respects, the district court is affirmed.
 
 
 30
 AFFIRMED.
 
 KISER, District Judge, concurring:
 
 31
 I concur with the results reached by Judge Hall and in his opinion except as to his analysis of the First Amendment issue. For the reasons stated in my concurring opinion in National Funeral Services v. Rockefeller, I believe the Virginia regulations are permissible time, place, and manner restrictions on speech in the funeral profession.
 
 BUTZNER, Senior Circuit Judge, dissenting:
 
 32
 Willard D. Tharp and Ben E. Rogers, Jr., licensed funeral directors, Guardian Plan, Inc., an insurance carrier, and one of its agents, Benny R. Benson, base their claim that Va.Code Sec. 54-260.74 is unconstitutional on the following propositions:
 
 
 33
 1. "[A] law forbidding or requiring conduct in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates due process of law." Baggett v. Bullitt, 377 U.S. 360, 367, 84 S.Ct. 1316, 1320, 12 L.Ed.2d 377 (1964).
 
 
 34
 2. The evidence discloses that state officials charged with enforcement and funeral licensees charged with obedience do not understand whether the statute prohibits telemarketing of preneed funeral arrangements.
 
 
 35
 3. Telemarketing of preneed funeral arrangements is a form of commercial speech that the first amendment protects from unwarranted governmental regulation. See Central Hudson Gas & Electric Corp. v. Public Service Comm'n, 447 U.S. 557, 561-66, 100 S.Ct. 2343, 2348-51, 65 L.Ed.2d 341 (1980).
 
 
 36
 I will first discuss the proposition that the statute is unconstitutionally vague when tested by the principles explained in Baggett v. Bullitt. Next I will consider the claim that a per se prohibition of telemarketing preneed funeral arrangements constitutes "unwarranted governmental regulation" within the meaning of Central Hudson. Finally, I will address Guardian's and Benson's claim that application of Virginia's licensing law for funeral directors and embalmers is unconstitutional.
 
 
 37
 * The appellants contend that Va.Code Sec. 54-260.74, on which the Board relies to bar preneed solicitation by telemarketing, applies only to at-need and not to preneed solicitation. They point out that Va.Code Sec. 11-24 minutely regulates preneed contracts without barring telemarketing. The confusion about which statute is applicable is not unfounded. A resolution passed by the Virginia General Assembly noted that laws relating to the sale of preneed contracts for funeral services are located in several titles of the Code and that the Attorney General has issued five opinions on the subject since 1984. See H.J. Res. 50, 1988 Reg.Sess. of the Va.Gen.Assem. In addition, the validity of the Board's regulations relating to the subject depend on statutory authorization, which in turn depends on which statute is controlling. This case presents a classic example of the precept: "Vagueness of wording is aggravated by prolixity and profusion of statutes, regulations, and administrative machinery...." Keyishian v. Board of Regents, 385 U.S. 589, 604, 87 S.Ct. 675, 684, 17 L.Ed.2d 629 (1967).
 
 
 38
 Certainly with respect to the legality of telemarketing Sec. 54-260.74(2)(c), (d), (e), and (f) are vaguely worded. Telemarketing is not mentioned. Paragraph (c) bars solicitation of dead bodies "after death or while death is impending." By implication it does not bar solicitation of preneed arrangements from persons in good health. It is directed against at-need solicitation. See Drummey v. State Board of Funeral Directors & Embalmers, 13 Cal.2d 75, 87 P.2d 848 (1939) (identical statute).
 
 
 39
 Paragraph (d) prohibits licensees from employing " 'cappers,' or 'steerers,' or 'solicitors' " to get business. But this provision, silent about telemarketing, does not apply to Tharp and Rogers who are themselves licensees--not the employers of cappers, steerers, or solicitors. Guardian is not an employee of a licensee. Quite properly the district court did not find that Guardian is an employed capper, steerer, or solicitor.
 
 
 40
 Paragraph (e) is directed against employment of persons to call on individuals or institutions "by whose influence dead human bodies may be turned over to a particular funeral establishment." The appellants do not seek through telemarketing or otherwise to induce institutions or individuals to turn dead bodies over to them. Indeed, read literally, as the Board insists, this provision would bar all preneed contracting in direct conflict with Sec. 11-24 which permits and regulates preneed contracting.
 
 
 41
 Paragraph (f) prohibits payment of a commission by a licensee to secure business. Again, this provision does not bar telemarketing.
 
 
 42
 In essence all of these provisions are directed against solicitation. But the Attorney General, citing Sec. 11-24, has given an opinion that a licensee may solicit preneed business, provided that the potential buyer initiates a request. See Op. Att'y Gen. 232-33 (1985-86). This proviso puts a gloss on an otherwise unintelligible statutory scheme but it does not have the force of law. The Attorney General's opinion simply illustrates the vagueness that results from applying the at-need provisions of Sec. 54-260.74(2)(c), (d), (e), and (f) to the preneed authorization of Sec. 11-24.
 
 
 43
 It is little wonder that the Board's witnesses gave inconsistent testimony about whether Sec. 54-260.74 prohibited preneed solicitation. Pursuant to Federal Rule of Civil Procedure 30(b)(6), the Board designated its Vice-Chairman, Frederick B. Carter, to testify on its behalf. He testified:
 
 
 44
 Q So the funeral service licensee would look at the law to determine whether the preneed solicitation is legal or illegal?
 
 
 45
 A In response to numerous questions of what were the limits of preneed solicitation, we sent everybody a copy of the operative statutes.
 
 
 46
 Q How would the licensee know what the Board's ultimate decision would be about verifiability of the preneed solicitation as it affects its legality or illegality?
 
 
 47
 A He would have to employ a fortune teller.
 
 
 48
 Later dealing with salesman solicitation, he testified:
 
 
 49
 Q But there is not an automatic prohibition on having salesmen solicit?
 
 
 50
 A No. We are very careful to note that we must use the less intrusive form to enforce the rights of people to have freedom of choice. I think that is probably federal, and certainly it is under your commercial free speech.
 
 
 51
 When Mark L. Forberg, Executive Secretary of the Board for eight years, read Carter's deposition, he became concerned about what Carter thought the law provided. He therefore consulted the Chairman of the Board. Forberg testified:
 
 
 52
 Q You basically told Mr. Teague [the Chairman], "Listen, Mr. Carter gave testimony that was different than what I understand the Board's position to be"?
 
 
 53
 A That's true, and I was concerned as to my comments would be differing from his and to let them know that they may very well be.
 
 
 54
 Emphasizing his disagreement with Carter's testimony, Forberg testified: "To my understanding the Board has always taken the position that solicitation, in-person solicitation, by phone or actually door-to-door is prohibited."
 
 
 55
 The inconsistent testimony of Carter and Forberg is not simply a difference of expression. It is more fundamental. The Board answered an interrogatory by saying that the practice of "directly soliciting customers by telephone and follow-up home visits is a questionable practice, which, depending upon the context and content of such solicitation, may violate Virginia law." Again, in response to a motion to dismiss, the Board took the position:
 
 
 56
 Only targeted telephone calls and in-person interviews are "questionable"; only if the content and circumstances of this type solicitation are such as to violate the law would the Board seek to prohibit its licensees from continuing such solicitation. Misleading or fraudulent commercial speech is not protected by the First Amendment.
 
 
 57
 At trial, however, the Executive Secretary interpreted Sec. 54-260.74 quite differently when asked to comment on the Board's pleading:
 
 
 58
 Q. Starting at the very bottom, ["o]nly targeted telephone calls and in-person interviews are questionable. Only if the content, circumstance of this type solicitation are such as to violate the law would the Board seek to prohibit its licensees from continuing such solicitation.["]
 
 
 59
 Do you see that?
 
 
 60
 A. Yes.
 
 
 61
 Q. Now, that is not consistent with what you believe the Board's position has been for the past eight years, is it?
 
 
 62
 A. We have been operating that any kind of direct contact, either by phone or in person, is prohibited.
 
 
 63
 In order to dispel the manifest vagueness of the statute, the Board called an expert witness. He testified:
 
 
 64
 Q. Well, let me ask it again. I don't understand. Are you saying that it is illegal for you to send out one letter to someone asking them to come see you, but legal to send out many letters?
 
 
 65
 A. In my mind.
 
 With reference to telemarketing, he said:
 
 66
 I don't think, you know, as far as what you prohibit and what you don't prohibit, I don't think that you can make a distinction. As far as using telemarketing and direct solicitation, as far as preneed funerals, I think if you do it and everybody gets a phone call, that is one thing. If you just target select groups because of age, because of economics, affluence and what not, I think that is in a sense a form of discrimination. You know, if you call everybody, that is fine.
 
 
 67
 With the Board's witnesses in disagreement about solicitation of preneed funeral arrangements, it appears that the Board and the district court, echoed by this court, have been compelled to place primary reliance on House Joint Resolution No. 50 to demonstrate that Virginia law pertaining to telemarketing is not vague. The Resolution proposed a study of issues concerning regulation of the funeral industry. Included among these issues is the following: "What forms of solicitation for preneed contracts should be allowed or should the solicitation of preneed contracts be prohibited as provided in the present law? " (emphasis added).
 
 
 68
 Unlike my brothers, I am not persuaded that this resolution is an authoritative clarification of an otherwise hopelessly vague law. It is axiomatic that it is not a legislative function to interpret prior statutes. See Marbury v. Madison, 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803); Gorman v. Sinking Fund Comm'rs, 25 F. 647, 650-51 (1885) (Virginia coupon cases). In this instance reliance on the Resolution is particularly inappropriate. The General Assembly undertook to declare the meaning of a statute that was enacted 38 years ago. The Board has not provided any legislative history of the Resolution, but it appears from the record that it was passed while this litigation was pending at the behest of the Board. It is not surprising that the interpretation placed on the statute buttresses the Board's litigating position. But even so, the Resolution is in error in conveying the impression that solicitation of preneed contracts is prohibited by present law. The Attorney General now concedes that solicitation is not prohibited. According to her, funeral directors may solicit preneed contracts by general advertising, targeted advertising, general mailings, and in-person interviews initiated by the consumer. Reliance on the Resolution illustrates the wisdom of the rubric: "[T]he views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one." United States v. Price, 361 U.S. 304, 313, 80 S.Ct. 326, 332, 4 L.Ed.2d 334 (1960).
 
 
 69
 The state's largest organization of the funeral industry, the Virginia Funeral Directors Association, Inc., which intervened to support the Board, is also confused by the vagueness of Virginia law on the practice of telemarketing preneed funeral arrangements. In August 1987 the Association took the position that funeral directors are not allowed direct solicitation of preneed contracts. But in March 1988 the Association included in its proposed findings of fact and conclusions of law the following: "State law does not prohibit the solicitation of preneed funeral contracts. Only solicitation at-need, a valid and rational limitation, is prohibited. Virginia Code Section 54-260.74(2)(c)."
 
 
 70
 The testimony of the Board's witnesses, its pleadings, its attempt to use the House Joint Resolution as a bulwark of its case, and the intervenor's vacillation demonstrate that Sec. 54-260.74, tested by the precepts of Baggett v. Bullitt, 377 U.S. at 367, 84 S.Ct. at 1320, is unconstitutionally vague when applied to telemarketing of preneed funeral arrangements. Revocation of the licenses held by Tharp and Rogers or prosecution of the appellants for telemarketing would deprive them of their property and liberty in violation of the due process clause of the fourteenth amendment.
 
 II
 
 71
 Although the vagueness of Sec. 54-260.74 provides a sufficient reason for reversing the judgment of the district court, I will address the appellants' claim that the prohibition against telemarketing violates the first amendment as incorporated by the fourteenth amendment. In Central Hudson Gas & Electric Corp. v. Public Service Commission, 447 U.S. 557, 566, 100 S.Ct. 2343, 2351, 65 L.Ed.2d 341 (1980), the Supreme Court prescribed the following four-part analysis to determine whether commercial speech is protected by the first amendment:
 
 
 72
 [Commercial speech] at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.
 
 
 73
 Selling preneed funeral arrangements is a lawful activity. It is recognized and regulated by Va.Code Sec. 11-24. Telemarketing is not fraudulent or misleading. It is widely used by business and industry to promote the sale of a variety of products and services.
 
 
 74
 States have a substantial interest in time, place, and manner restrictions on speech. But Virginia's prohibition against telemarketing preneed funeral arrangements is not a time, place, and manner restriction. It is a restriction based on the content of speech. Content alone sets apart telemarketing of preneed funeral arrangements from the telemarketing of other goods and services. Consequently, the state lacks constitutional authority to prohibit such telemarketing under the guise of a permissible time, place, and manner restriction. See Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, 425 U.S. 748, 771, 96 S.Ct. 1817, 1830, 48 L.Ed.2d 346 (1976).
 
 
 75
 Nevertheless the state has substantial interest in the sale of preneed funeral arrangements. Since these arrangements involve the present payment of money for future expenditure, the state has an interest in seeing that the money remains available. The state also has an interest in protecting consumers from fraud and coercion. The state's interest leads to consideration of the last two factors of the Central Hudson analysis: "whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest." 447 U.S. at 566, 100 S.Ct. at 2351.
 
 
 76
 Prohibition of telemarketing does not directly advance the governmental interest of safeguarding preneed funeral payments. Sections 11-24 and -25 specify the content of preneed contracts and the means of safeguarding payments. Telemarketing is not inherently fraudulent or coercive. This is demonstrated by the fact that although the state outlaws fraud in any form, it permits telemarketing of other legitimate products and services. Coercion can be avoided by simply hanging up the phone. Furthermore, as an antidote to coercion or any other cause for dissatisfaction, Sec. 11-24 permits consumers to rescind preneed contracts and to recover their payments at any time before funeral services are furnished.
 
 
 77
 Additional evidence showing that Virginia's prohibition against telemarketing preneed funeral arrangements is unnecessary to directly advance the state's interests is found in the Regulatory Review Report of the Virginia Board of Funeral Directors and Embalmers issued March 1, 1985. After public hearings, the Board proposed to modify its regulations proscribing, except by general advertising, solicitation of funeral business. The proposed regulation provided: "The advertisings or direct contact by a Virginia Funeral Service Licensee or Funeral Director for preneed funeral planning, pursuant to Chapter 5 (Sec. 11-24 et seq. of Title 11), shall not constitute solicitation." The Vice-Chairman testified that "the Board unanimously considered the change to be in the interest of the public or it wouldn't have recommended it." This proposal was consistent with section 5 of "A Model Law for Prepaid Funeral Arrangements," developed by the American Association of Retired Persons. The drafters note that section 5 "offers the consumer the convenience of telephone and door-to-door sales."
 
 
 78
 The recommendation of the Board came to naught. It was successfully opposed by funeral directors who, according to the testimony of the Board's Executive Secretary, thought that a regulation allowing preneed solicitation "placed them in a position where they felt that if they were to maintain a viable business they would have to compete with the others." From all of this one may justifiably infer that the Board's application of Sec. 54-260.74 to bar telemarketing exists primarily to prevent competition instead of advancing the legitimate interests of the state.
 
 
 79
 The evidence disclosed by this record, analyzed according to Central Hudson, 447 U.S. at 566, 100 S.Ct. at 2351, establishes that application of Sec. 54-260.74 to ban telemarketing of preneed funeral arrangements infringes the appellants' right to commercial speech that is protected by the first and fourteenth amendments.
 
 III
 
 80
 Guardian and Benson challenge the Board's application to them of laws requiring funeral directors and embalmers to be licensed. Guardian is a life insurance company fully regulated by the State Corporation Commission. Benson and its other salespersons must be licensed insurance agents. Its policies and annuities must conform to Virginia's insurance laws. Guardian and its affiliated company write life insurance policies and annuities to cover funeral expenses. The insured may revocably assign the insurance proceeds to Guardian. Guardian contracts with a local funeral home in the area to provide eventual funeral services in accordance with the preneed arrangements the insured has selected. The insured may revoke the assignment at any time and name another beneficiary or cancel the policy in accordance with the stipulated cash surrender value. He can change his funeral plans at any time and select another funeral home. After the insured dies his next of kin can use all or some of the proceeds to pay for the funeral at a funeral home of their choice. The preneed arrangements must be approved on two occasions by licensed funeral directors who agree to provide the services, initially when the insured revocably assigns the policy and subsequently when at-need arrangements are made by the insured's next of kin.
 
 
 81
 To become a licensed funeral director and embalmer, Guardian's insurance agents would have to graduate from a mortuary school. Virginia's school has a two-year program. The agents would then have to pass an examination on a number of subjects, including anatomy, chemistry, bacteriology, pathology, public health, embalming, restorative art, and psychology. In lieu of attending a mortuary school, the agents could solicit a position as resident trainees in a funeral home for two years. Each agent would have to assist in embalming 25 bodies and in conducting 25 funerals. Va.Code Secs. 54-260.70 and 54-260.72.
 
 
 82
 The Board, aware that we judges, like other human beings, have a penchant for passing complex controversies to someone else for solution, urges us to require Guardian to take its complaint to the legislature. Frequently such a course is justified. There may be no judicial remedy for a litigant's complaint; the only relief may come from the legislature by a change in the law. See, e.g., Williamson v. Lee Optical, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955). Contrary to the Board's argument, this case presents no occasion for referring Guardian to the legislature. No Virginia statute requires life insurance agents who fund preneed funeral arrangements to be licensed funeral directors and embalmers, and no Virginia court has construed the law to impose this requirement.
 
 
 83
 Indeed, Va.Code Secs. 11-24 and 54-260.74 appear to contemplate that persons other than licensed funeral directors may contract for preneed funeral arrangements. Section 11-24 provides in part:
 
 
 84
 It shall be unlawful for any person, firm or corporation, residing or doing business within this Commonwealth, to make, either directly or indirectly by any means, an agreement for the sale of personal property to be used in connection with the final disposition of a dead human body, or for the furnishing of professional services of a funeral director or funeral service licensee, including cremation services, wherein the personal property is not to be delivered or the services are not to be rendered until the occurrence of the death of the person for whose funeral, burial or other disposition such property or services are to be furnished unless (i) any such agreement be in writing.... (emphasis added)
 
 
 85
 It is significant that the statute's prohibition is directed to "any person," which, of course, would include Guardian's agents. In the same sentence the statute draws a distinction between "any person" and a "funeral director."Section 54-260.74 generally proscribes illegal practices by licensed funeral directors. But when the statute regulates insurance for funeral services, its provisions are not directed to licensed funeral directors. Instead, the statute addresses any company, corporation, or association. It provides:
 
 
 86
 No company, corporation or association ... engaged in the business of providing any insurance upon the life of any individual, under which contract of insurance any obligation might or could arise to care for the remains of the insured, shall contract to pay or shall pay any such insurance or such benefits, or any part of either such insurance or benefits, to any funeral establishment or to any licensee or to any individual in any manner which might or could deprive the representative, next of kin, or family of such deceased person from, or in any way control them or any of them in procuring such funeral establishment, person licensed for the practice of funeral service or other proper and competent person to perform such necessary and proper services, and to furnish supplies as may be necessary and proper to care for the remains of such decedent as such representative, next of kin, or family may desire. (emphasis added)
 
 
 87
 There is no contention that Guardian's practices violate either Sec. 11-24 or the insurance provision of Sec. 54-260.74, other than the fact that Guardian's agents are not licensed funeral directors.
 
 
 88
 Despite Secs. 11-24 and 54-260.74, which recognize that persons and companies, other than funeral directors, can enter into preneed contracts with consumers and sell preneed insurance, the Board relies on a definition of funeral services that does not even mention preneed contracts or insurance. Virginia Code Sec. 54-260.67(2) includes among those activities constituting the "Practice of funeral services," for which a license is needed, "the engagement of making arrangements for funeral services." The Board has interpreted this definition to apply to Guardian's business. Guardian contends that this application of the statute renders it vague as applied and violates the due process clause. In response to the claim of vagueness, the Board relies on Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982), for the proposition: "A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." 455 U.S. at 495, 102 S.Ct. at 1191.
 
 
 89
 The Board's reliance on Flipside is misplaced. Flipside dealt with a "facial challenge" to an ordinance. 455 U.S. at 491, 102 S.Ct. at 1189. But Guardian does not challenge the facial validity of Sec. 54-260.67(2). The definition contained in this section may not be facially vague when applied to at-need arrangements. Guardian challenges the Board's application of the ordinance to its preneed business. In Flipside the Court was careful to reserve constitutional questions arising out of the application of the ordinance. 455 U.S. at 503-04, 102 S.Ct. at 1195-96. Because this case involves the application of the statutory definition to Guardian, Flipside does not bar Guardian's challenge. Therefore, the issue is whether Sec. 54-260.67(2) as applied to Guardian's preneed business is "so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." Baggett v. Bullit, 377 U.S. at 367, 84 S.Ct. at 1320.
 
 
 90
 One way of determining whether a law is vague is to question the people who enforce it. The Board's Vice-Chairman, designated by the Board as its Rule 30(b)(6) spokesman, could give no clear answer about the legality of Guardian's preneed business. He testified:
 
 
 91
 Q Does the law have a bright-line rule about when an insurance agent, what we have been discussing, crosses the line and starts to violate the law, or is it back to the gray area?
 
 
 92
 A There is no bright line in the law. There is a line that says you're not supposed to engage in doing that which tends to restrict the freedom of choice of the purchaser or of the general public to select a funeral director of their choice. That is the line. Reasonable men might disagree on what that is all about....
 
 
 93
 * * *
 
 
 94
 * * *
 
 
 95
 Q So the Board interprets the law as forbidding a nonlicensee from discussing funeral merchandising and costs, is that correct?
 
 
 96
 A That is what the minutes say. The minutes are correct.
 
 
 97
 Q Okay. Now would that apply to someone who is not an employee of a funeral service establishment?
 
 
 98
 A I don't know.
 
 
 99
 In his deposition the Executive Secretary testified:
 
 
 100
 Q ... Do you know personally, Mr. Forberg, where the line is drawn between discussing goods and services as part of an insurance agent's activity and making arrangements as the statute defines?
 
 
 101
 A Not completely.
 
 
 102
 At trial the Executive Secretary testified:
 
 
 103
 Q. You need a license only if you are going to sign on the dotted line?
 
 
 104
 A. At the point where arrangements are made and merchandise is sold and arrangements are actually made.
 
 
 105
 * * *
 
 
 106
 * * *
 
 
 107
 Q. Well, can an insurance agent discuss specific cost of caskets and flowers and all?
 
 
 108
 A. That is the gray area. I don't know.
 
 
 109
 Q. How would an insurance agent know?
 
 
 110
 A. Probably wouldn't.
 
 
 111
 Guardian, of course, is subject to criminal prosecution if it steps over the line.
 
 
 112
 When the Board designated spokesman testified, he repudiated the Executive Secretary's testimony, saying: "Our Secretary was wrong." The spokesman took the position that an insurance agent would violate the law by mentioning items and prices of funeral services even though the consumer and the agent did not enter into an agreement for furnishing the services.
 
 
 113
 Another example of the law's vagueness as applied to Guardian's insurance business is disclosed by the following controversy among those who enforce the law concerning the application of Sec. 54-260.73 which requires a funeral home to have a fully equipped embalming room. After explaining that the Board would not permit an insurance office to be located in a funeral home, the Executive Secretary testified:
 
 
 114
 Q. If he [the insurance agent] intended to merely discuss or make preneed arrangements, he would need an embalming room in his office?
 
 
 115
 A. Correct.
 
 
 116
 Q. Also need instruments in his office?
 
 
 117
 A. Correct.
 
 
 118
 Q. Wouldn't he need all the necessary instruments and supplies for the preparation of and embalming of dead human bodies in his insurance office?
 
 
 119
 A. Right.
 
 
 120
 In contrast, the Attorney General insists that there is no such requirement. The Attorney General takes the position that if the insurance agent obtains a license as a funeral director and embalmer he need not have an embalming room in his office. This, perhaps, is a little less irrational than the Secretary's position, but it is, nevertheless, another manifestation of the vagueness resulting from the Board's application of the definition in Sec. 54-260.67(2) to the business of writing insurance coverage for preneed funeral arrangements.
 
 
 121
 The General Assembly of Virginia has dealt with contracts and insurance pertaining to preneed funeral arrangements in a straightforward way in Secs. 11-24 and 54-260.74 by setting forth the rules that "any person" or "any company" must follow to engage in this business. But the Board by its tortured application of the definition in Sec. 54-260.67(2) has rendered the law so vague that it violates the rights secured to Guardian and Benson by the due process clause.
 
 
 122
 As an independent ground for reversal, apart from vagueness, Guardian contends that the requirement that its insurance agents become licensed funeral directors and embalmers is so irrational that it violates the due process clause. For the purpose of this dissent it is unnecessary to address this argument. The vagueness of the law as applied by the Board to Guardian's business provides a sufficient ground for reversing the district court on the issue of licensing.
 
 
 
 [1]
 All of the parties agree that Virginia law also bans in-person solicitation by funeral service professionals. Va.Code Sec. 54.260.74(2). However, appellants do not seek to engage in this type of solicitation and, consequently, have not challenged the ban's constitutionality
 
 
 [2]
 For analytical purposes, we will treat appellants' due process and equal protection challenges as one. We do this because, when reviewing economic regulations, the legal standard--rationally related to a legitimate state interest--is the same. Sutker v. Illinois State Dental Society, 808 F.2d 632 n. 1 (7th Cir.1986)
 
 
 [3]
 The Commonwealth asserts that because neither of these appellants has personally engaged in preneed solicitation, neither has a personal stake in the resolution of this issue sufficient to give him standing. The district court properly rejected this argument. Both Tharp and Rogers are currently under investigation for their participation in the Guardian Plan and both have been threatened with criminal prosecution. Moreover, both desire to solicit preneed customers personally and on behalf of Guardian if this statute is overturned. Under these circumstances, appellants are immediately in danger of sustaining a direct injury because of the Commonwealth's actions, and thus, have standing to challenge the statute. See City of Los Angeles v. Lyons, 461 U.S. 95, 101-02, 103 S.Ct. 1660, 1664-65, 75 L.Ed.2d 675 (1983)
 
 
 [4]
 Likewise, we are unpersuaded by appellants' argument that because preneed funeral contracts are addressed in Title 11 of the Virginia Code, that the regulation found in Title 54 of the Code could not have been intended to address preneed solicitation. Title 11 of the Code is the Title which regulates all contracts, while Title 54 is the Title which regulates the underlying funeral service profession. As the lower court recognized, the Virginia General Assembly could certainly have chosen to regulate different aspects of preneed funeral arrangements in different statutes
 
 
 [5]
 The appellants' contention that Va.Code Sec. 54-260.74 is unconstitutionally vague is best rebuked by their own pleadings. In response to a motion by the Commonwealth requesting that the district court abstain from hearing this case because it involved unsettled questions of state law, appellants stated:
 The statute rendering solicitation illegal (Va.Code Sec. 54-260.74) is clear and unambiguous. There is no dispute about its meaning, and therefore abstention is completely inappropriate. (emphasis in original).
 This passage reveals appellants' vagueness argument for what it is, an obfuscation erected to give them another basis for attacking this statute. The statute plainly prohibits solicitation and we so hold.
 
 
 [6]
 As the concurrence points out, although Rockefeller rejected appellants' argument, the panel could not reach a consensus on the appropriate reasoning. Nonetheless, the holding of Rockefeller, that similar speech restraints were constitutional, applies with undiminished force to this case
 
 
 [7]
 The statute in question could arguably be read to ban all telephone solicitation, regardless if calls are made to private residences or not. However, appellants' challenge concerns only their direct marketing of the plan into private households. Therefore, the issue before us now is precisely the same as the one dispensed with by Rockefeller. We note that appellants cannot raise the potential unconstitutionality of this statute as applied to others because the first amendment overbreadth doctrine is not recognized in the context of commercial speech. Bates v. State Bar of Arizona, 433 U.S. 350, 380-81, 97 S.Ct. 2691, 2707-08, 53 L.Ed.2d 810 (1977)